J-S19035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LAWRENCE CUSTIS, | : | |
| | : | |
| Appellant | : | No. 3223 EDA 2014 |

Appeal from the Judgment of Sentence November 7, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0008834-2013

BEFORE: BENDER, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MAY 04, 2016**

Lawrence Custis ("Custis") appeals from the judgment of sentence entered after a jury convicted him of murder of the first degree, possession of an instrument of crime, and carrying a firearm in public in Philadelphia.[1] We affirm.

The trial court set forth the relevant factual history in its Pa.R.A.P. 1925(a) Opinion, which we incorporate herein by reference. *See* Trial Court Opinion, 5/14/15, at 2-6.

The shooting of Will Street ("the victim") occurred in the Kingsessing section of southwestern Philadelphia (hereinafter "the Kingsessing neighborhood"). During the subsequent police investigation, witnesses told police that they had seen Custis walking away from the scene of the

---

[1] *See* 18 Pa.C.S.A. §§ 2502(a), 907, 6108.

shooting.[2] Approximately five months after the shooting, the police obtained a warrant to arrest Custis. The police then made two unsuccessful attempts to arrest him at his last known residence, located in the Kingsessing neighborhood. Their efforts to locate Custis elsewhere in the neighborhood were likewise unsuccessful. The police later received a tip that Custis might be found in an area of northern Philadelphia, which is several miles from the Kingsessing neighborhood. Approximately 15 months after the shooting, acting on the tip, the police located and arrested Custis in a barber shop in northern Philadelphia.

The Commonwealth charged Custis with the above-mentioned offenses, and a separate firearms offense, which was dismissed prior to trial. In November 2014, the matter proceeded to a jury trial.

Notably to this appeal, Commonwealth witness Kevin Johnson ("Johnson"), the victim's cousin, who had responded to the scene immediately after the shooting, testified on direct examination as to an incident he had witnessed in the Kingsessing neighborhood approximately three weeks prior to the shooting. Specifically, Johnson remarked that he had overheard Custis state to the victim during an argument, "I'm getting tired of this, this and that. I should have shot you last month." N.T.,

---

[2] While more than one of the witnesses initially told police that Custis was the shooter, they later changed their testimony at trial.

- 2 -

11/4/14, at 88.[3]  Custis's defense counsel immediately moved for a mistrial, objecting that the prosecution had improperly failed to disclose this inculpatory statement in discovery, which prejudiced the defense.  After conducting a sidebar and inquiring of the prosecutor whether she knew that Johnson would offer this testimony, the trial court denied the mistrial Motion, crediting the prosecutor's assertion that she did not know about Custis's threat statement prior to trial, and therefore, could not have disclosed it in discovery.[4]

After the close of evidence, the trial court conducted a conference on the proposed jury charges, wherein the Commonwealth requested, over the defense's objection, that the court give a flight/consciousness of guilt instruction (hereinafter "flight instruction"), based upon Custis's alleged "flight and concealment" of his whereabouts following the shooting.  The trial court found that the circumstances warranted a flight instruction, and so

---

[3] For ease of reference, Johnson's testimony in this regard is hereinafter referred to as "Custis's threat statement."

[4] The trial court permitted both counsel to question Johnson, off the record and outside of the presence of the jury, as to whether he intended to introduce any other unexpected testimony.  N.T., 11/4/14, at 96-99.  On defense counsel's later cross-examination of Johnson, counsel asked Johnson whether, prior to trial, he had informed the prosecutor about Custis's threat statement.  *Id.* at 113-14.  Johnson replied that he did inform the prosecutor on the day before trial.  *Id.* at 114-15.

instructed the jury.[5]  At the close of trial, the jury found Custis guilty of all counts.

On November 7, 2014, the trial court sentenced Custis to life in prison without the possibility of parole.  Custis timely filed a Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.  The trial court then issued a Pa.R.A.P. 1925(a) Opinion.

Custis now presents the following issues for our review:

   1.  Did not the lower court err in denying defense counsel's
       [M]otion for [a] mistrial where the Commonwealth

---

[5] The trial court gave the following flight instruction:

> There was evidence, including the testimony of Officer [Kaliv] Ivy and[] members of the homicide unit and intelligence unit of the Philadelphia Police Department[,] that tended to show that [Custis] left his neighborhood[, *i.e.*, the Kingsessing neighborhood,] after the shooting in this case.  The Commonwealth contends that he fled or hid from police.  The credibility, weight, and effect of this evidence is for you to decide.  Generally speaking, when a crime has been committed and a person thinks he or she may be accused of committing it and he or she flees or conceals himself [], such flight or concealment is a circumstance tending to prove the person is conscious of guilt.  Such flight or concealment does not necessarily show consciousness of guilt in every case.  A person may flee or hide for some other motive and may do so even though innocent.  Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case and especially upon motives that may have prompted flight or concealment.  You may not find [Custis] guilty solely upon the basis of flight or concealment.

N.T.,  11/6/14, at 147-48 (paragraph breaks omitted).  This instruction mirrors the Pennsylvania Standard Criminal Jury Instruction on flight/consciousness of guilt.  *See* Pa.S.S.J.I (Crim.) 3.14.

committed a discovery violation by failing to provide [Custis] with the statement of [Johnson,] who testified at trial that he heard [Custis] say to the decedent, "I should have shot you last month," and [Johnson] also testified that he had relayed this information to the [D]istrict [A]ttorney prior to trial?

2. Did not the lower court err in instructing the jury that [Custis] fled from the police, and that such conduct tends to show that a person is conscious of guilt, where the instruction was improper because the police made only a minimal effort to find [Custis], and apprehended him, without incident, on their second attempt?

3. Did not the lower court err in overruling defense counsel's objection during the prosecutor's closing argument[,] where the prosecutor used the phrase several times "this is our community," while exhorting jurors to do the "right thing," which constituted an improper request that the jurors exact revenge for the crime in general[,] instead of relying on the facts of the case?

Brief for Appellant at 5.

Custis first argues that the trial court erred and deprived him of a fair trial by denying his Motion for a mistrial concerning the prosecution's alleged discovery violation as to Custis's threat statement. *See id.* at 26-27. Custis points out that Johnson specifically testified, on cross-examination, that he had informed the prosecutor, prior to trial, of Custis's threat statement, and argues that this directly rebuts the prosecutor's statement to the contrary during the sidebar conference. *Id.* at 27. According to Custis, he suffered unfair prejudice from the prosecution's improper introduction of Custis's threat statement, and he should be granted a new trial wherein the prosecution shall be required to disclose all inculpatory evidence. *Id.* at 30, 32.

It is well settled that "[a] mistrial is an 'extreme remedy' that is only required where the challenged event deprived the accused of a fair and impartial trial. The denial of a mistrial motion is reviewed for an abuse of discretion." *Commonwealth v. Laird*, 988 A.2d 618, 638 (Pa. 2010) (citations omitted); *see also Commonwealth v. Bozic*, 997 A.2d 1211, 1226 (Pa. Super. 2010) (in the context of reviewing the denial of a mistrial motion, stating that "the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason." (citation omitted)). "The trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, assess the degree of any resulting prejudice." *Bozic*, 997 A.2d at 1225 (citation and ellipses omitted).

In its Pa.R.A.P. 1925(a) Opinion, the trial court addressed Custis's claim, set forth the applicable law and relevant portions of the transcript, and determined that no discovery violation occurred, and a mistrial was thus unwarranted, because the prosecutor was not aware of Custis's threat statement until Johnson testified at trial. *See* Trial Court Opinion, 5/14/15, at 7-10. In so ruling, the trial court relied upon this Court's decision in *Commonwealth v. Sullivan*, 820 A.2d 795, 804 (Pa. Super. 2003) (holding that the Commonwealth does not commit a discovery violation when it fails to disclose to the defense inculpatory evidence that it does not possess and

of which it is unaware); *see also Commonwealth v. Collins*, 957 A.2d 237, 253 (Pa. 2008) (same).  The trial court's analysis is supported by the law and the record, and we therefore affirm on this basis in concluding that the court did not abuse its discretion by denying Custis the extreme remedy of a mistrial.  *See* Trial Court Opinion, 5/14/15, at 7-10.[6]

Next, Custis contends that the trial court erred by giving the jury a flight instruction, over defense counsel's objection, based upon Custis's purported flight or concealment following the shooting.  *See* Brief for Appellant at 33-36.  Custis argues that there was no evidence that he had fled or concealed his whereabouts, and that the police had made only a "minimal effort" in attempting to locate him.  *See id.* at 33; *see also id.* (pointing out that the police found Custis in Philadelphia, his "city of residence[,]" and "he was apprehended at [a] barber shop, an indication that he was merely following a normal routine.").

We review a challenge to a jury charge for an abuse of discretion. *Commonwealth v. Greer*, 951 A.2d 346, 354 (Pa. 2008); *see also*

---

[6] To the extent that Custis argues that the trial court's reliance upon *Sullivan* is misplaced, *see* Brief for Appellant at 29-30, we are unpersuaded by this claim.  *Sullivan* is closely analogous to the instant case, and even if it was not, there is ample authority for the well-settled proposition stated in *Sullivan* that the prosecution does not violate the discovery rules in instances where it fails to provide the defense with inculpatory evidence that it does not possess or of which it is unaware.  *See Commonwealth v. Burke*, 781 A.2d 1136, 1142 (Pa. 2001) (collecting the "unbroken line of decisions"); *see also Collins*, *supra*.  Moreover, to the extent that Custis challenges the trial court's crediting the prosecutor's assertion at trial that she was not previously made aware of Custis's threat statement, we decline Custis's invitation to improperly substitute our determination for that of the trial court on the matter of the prosecutor's veracity.

*Commonwealth v. Thomas*, 904 A.2d 964, 970 (Pa. Super. 2006) (stating that "[i]n examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case."). "A jury instruction is proper if supported by the evidence of record." *Commonwealth v. Clark*, 961 A.2d 80, 92 (Pa. 2008).

A flight instruction is properly given where "a person commits a crime, knows that he is wanted therefor, and flees or conceals himself[. S]uch conduct is evidence of consciousness of guilt, and may form the basis [of a conviction,] in connection with other proof from which guilt may be inferred." *Id.* (citation and brackets omitted); *see also Commonwealth v. Tha*, 64 A.3d 704, 714 (Pa. Super. 2013).

Here, the record reflects that the victim was shot and killed in the Kingsessing neighborhood. *See* N.T., 11/4/14, at 121-22, 130, 161-62. The shooting occurred in broad daylight, and several witnesses saw Custis walking away from the scene. *See id.* at 81-83, 121-25, 145, 156. Additionally, Gerald Harvey ("Harvey"), who knew Custis from the Kingsessing neighborhood, testified that on the day of the shooting, he encountered Custis on the street, and Custis confessed to Harvey that he had shot the victim because the victim's brother previously gave Custis some bad pills. *See id.* at 161-62.

When the warrant was issued for Custis's arrest, his last known place of residence was in the Kingsessing neighborhood. *See* N.T., 11/6/14, at

- 8 -

62, 62, 141-43; *see also* N.T., 11/4/14, at 119-20, 161 (wherein two acquaintances of Custis stated that he lived on Woodland Avenue, located in the Kingsessing neighborhood, for at least several years). Custis was not apprehended until over a year after the shooting, despite the police having initially acted on the arrest warrant five months after the shooting, and the several attempts police made to find Custis in the Kingsessing neighborhood. N.T., 11/6/14, at 6-8, 141-43; *see also* Trial Court Opinion, 5/14/15, at 12 (stating that "[t]he Commonwealth presented compelling evidence that after the shooting took place, despite several attempts, various officers and detectives were unable to locate [Custis] anywhere in the vicinity of the scene of the crime."). The police finally located and apprehended Custis in northern Philadelphia, the opposite side of the City from the Kingsessing neighborhood.[7] *See* 11/6/14, at 6-8, 11-12; *see also* Trial Court Opinion, 5/14/15, at 12.

Though no direct evidence was presented to establish Custis's actual knowledge that he was being sought by the police for this crime, we conclude that the above-mentioned circumstantial evidence permits a reasonable inference that Custis was aware that the police were or would be looking for him in connection with the shooting, and therefore, the trial court was within its discretion in giving the jury a flight instruction. *See*

---

[7] According to the Commonwealth, the area in which Custis was apprehended was eight miles, and a "45-minute car ride[, away,] from [Custis's] home" in the Kingsessing neighborhood. Brief for the Commonwealth at 14.

***Commonwealth v. Whack***, 393 A.2d 417, 420 (Pa. 1978) (where the defendant was seen running from the scene of a stabbing, and was not seen again at his home or the places he usually frequented for approximately two months, holding that this was sufficient to establish a reasonable inference that the defendant had deliberately attempted to conceal his whereabouts to avoid prosecution); ***Commonwealth v. Tinsley***, 350 A.2d 791, 793 (Pa. 1976) (stating that where "immediately after [the homicide,] and for a period of five days thereafter[, the defendant] abandoned his pattern of living and could not be located at those places where his regular pursuits would place him[,]" and "contacts at his residence … were to no avail … and no explanation [] [was offered] for this absence," holding that "these circumstances raise a permissible inference that [the defendant] was aware that he was being sought by police and attempted to conceal his whereabouts to avoid apprehension for this crime."); ***see also*** Trial Court Opinion, 5/14/15, at 12 (stating that "[t]he circumstances surrounding [Custis's] evasion from law enforcement authorities is sufficient to infer [his] knowledge that he was wanted in connection with the crime and warranted [an] instruction to the jury that such conduct "**may** form a basis, in connection with other proof, from which guilt may be inferred." (emphasis in original, quotation marks omitted)).

Finally, Custis asserts that he is entitled to a new trial because the trial court erred by overruling the objection of his counsel to portions of the

prosecutor's closing argument, wherein she referred to "our community."

**See** Brief for Appellant at 37-41. Custis contends that the prosecutor's

> attacks were of a sort specifically condemned by Pennsylvania's [appellate] courts, that is, by urging the jury to "do the right thing" by "our community," she invited them to see themselves as victims and exact revenge. This appeal to the emotions encouraged the jurors to shift their inquiry away from the case before them, and thus prejudiced [Custis].

**Id.** at 40; **see also id.** at 39 (citing, *inter alia*, **Commonwealth v. Revty**,

295 A.2d 300, 302 (Pa. 1972) (stating that "the prosecutor's unique position

as both an administrator of justice and an advocate gives [her] a

responsibility not to be vindictive or attempt in any manner to influence the

jury by arousing their prejudices.")).

> With regard to a claim of prosecutorial misconduct in a closing statement, it is well settled that [t]he prosecutor is allowed to vigorously argue h[er] case so long as h[er] comments are supported by the evidence or constitute legitimate inferences arising from that evidence. In considering a claim of prosecutorial misconduct, our inquiry is centered on whether the defendant was deprived of a fair trial, not deprived of a perfect one. Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect … was to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.

> \* \* \*

> In determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.

***Commonwealth v. Ragland***, 991 A.2d 336, 340-41 (Pa. Super. 2010) (citations and brackets omitted); ***see also Commonwealth v. Judy***, 978 A.2d 1015, 1019-20 (Pa. Super. 2009).

In its Opinion, the trial court addressed Custis's claim, set forth the relevant excerpts of the prosecutor's closing argument, and determined that none of the prosecutor's remarks during closing were inappropriate, nor did they prejudice the jury to develop a fixed bias and hostility toward Custis. ***See*** Trial Court Opinion, 5/14/15, at 14-16. We agree with the trial court's determination, and affirm on this basis in rejecting Custis's claim of prosecutorial misconduct. ***See id.***; ***see also Ragland***, ***supra***.

Judgment of sentence affirmed.
Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/2016

- 12 -

# IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
# CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0008834-2013

v.     **FILED**     SUPERIOR COURT

MAY 1 4 2015

LAWRENCE CUSTIS     Criminal Appeals Unit

~~~~ ~~icial District of PA 3223 EDA 2014

CP-51-CR-0004815-2013 Comm. v. RICHARDSON, MARK
Opinion

**OPINION**

Byrd, J.     7294721921     **May 14, 2015**

Lawrence Custis filed a direct appeal from this court's November 7, 2014 judgment of sentence. In accordance with the requirements of PA. R.APP. PROC. 1925, the following Opinion is submitted.

## I. PROCEDURAL HISTORY

Defendant Lawrence Custis was arrested on April 4, 2013 and charged with a range of offenses.[1] On November 7, 2014, following a jury trial before this court, defendant was convicted of murder in the first degree, carrying a firearm on public streets or public property in Philadelphia, and possession of an instrument of crime. He was then sentenced to life imprisonment without the possibility of parole on the charge of murder in the first degree.[2] On November 12, 2014 defendant filed a Notice of Appeal. This court then issued an order on November 13, 2014 directing defendant to file a Statement of Matters Complained of on Appeal in accordance with PA. R.APP. PROC. 1925 (b). On December 4, 2014 defendant filed a request

---

[1] Defendant was charged with (18 PA. CONS. STAT. ANN. § 2502(a-c) murder; 6108 carrying a firearm on public streets or public property in Philadelphia; § 907 (a) possession of an instrument of crime; and § 6106 (a)(1) carrying firearms without a license, which was dismissed at lower court, all other charges proceeded to trial.

[2] Defendant was sentenced to life imprisonment without the possibility of parole followed by a consecutive five to ten years of imprisonment on the remaining offenses.

for an extension of time within which to file said Statement of Matters Complained of on Appeal. On January 7, 2015 this court issued an order granting defendant's request and ordered defendant to file said statement by January 12, 2015. On January 14, 2015 said statement was filed.

## II. FACTUAL BACKGROUND

At trial the Commonwealth presented evidence which, when viewed in the light most favorable to the Commonwealth as the verdict winner, established the following.

On the afternoon of January 9, 2012, defendant was seen walking down the 1500 block of Lindenwood Street,[3] located in southwest Philadelphia. *N.T.* 11/4/14 at 121-122. There, defendant had a brief conversation with Shantel Hill outside of her home at 1543 South Lindenwood Street. *Id.* at 122-124. Afterward, as Ms. Hill walked towards her home she heard three gunshots. *Id.* at 124-125. She turned and saw decedent, Will Street, fall to the ground between two vehicles. *Id.* at 130-131. She then saw defendant walk between the two vehicles and behind decedent, before he "walk[ed] away" towards Woodland Avenue. *Id.*

Kevin Johnson, decedent's first cousin, was inside his home at 1522 South Lindenwood Street when he heard the gunshots. *Id.* at 82. Mr. Johnson ran to his front door and observed several people running around the crime scene. *Id.* at 82. He also heard a female's voice,[4] believed to be Ms. Hill, yell "It's Will."*Id.* at 134. Mr. Johnson got dressed and ran outside, where he heard a male's voice[5] shout "He's gone, [h]e's gone." *Id.* Mr. Johnson then ran down the street and saw decedent lying on the ground, half of his body on the sidewalk and the other

---

[3] Lindenwood Street is parallel to 53rd Street, and both intersect Woodland Avenue. *N.T.* 11/4/14 at 120-121.
[4] At trial Mr. Johnson identified the woman's voice as either Ms. "Penny" or Ms. Hill. *Id.* at 134.
[5] Mr. Johnson identified the male's voice as Mr. Fred. *Id.*

2

*Commonwealth v. Lawrence Custis*

half in the street behind a van. *Id.* at 82, 85-86.[6] Mr. Johnson repeatedly yelled decedent's name and held onto the victim's bloodied body. *Id.* at 83, 85. After Mr. Johnson's girlfriend pulled him away from decedent's body, police officers drove up and detained him for questioning. *Id.* at 83. Upon arrival the officers observed decedent lying face down on the ground between two vehicles, bleeding profusely from multiple gunshot wounds. *Id.* at 79. Paramedics arrived and transported decedent to the hospital where he was pronounced dead. *Id.*

In April of 2012, three months after the shooting, Daniel Scott gave a statement to detectives. *N.T.* 11/5/14 at 10, 21-22. He stated that on January 9, 2012, immediately after the shooting, he saw defendant with a gun in his hand wearing a grey jacket with stripes on the sleeves. *Id.* Mr. Scott then observed defendant place the gun in his pants, adjust his jacket and walk westbound on Woodland and Southbound on 53rd Street (in the direction of Ruby Street). *Id.*[7] Shortly after the shooting, Gerald Harvey, who knew both defendant and decedent from the neighborhood, observed defendant on Ruby Street, approximately a block and a half from the crime scene. *N.T.* 11/4/14 at 160-162. Mr. Harvey approached defendant, who was wearing a grey jacket, and asked him "Why [did] you kill that boy?" referring to decedent. *Id.* at 162. Defendant began crying and eventually stated that decedent's brother, Wayne, provided him with "some bad pills" but he was unable to get to him. *Id.* at 171-172. Defendant then stated "I just shot him[.]" *Id.* at 163-164.

Police officers obtained internal and external video footage from a grocery store located at 5207 Woodland Street, on the northwest corner of Lindenwood and Woodland Street, which depicted the front of the store and the 1500 block of Lindenwood. *Id.* at 86,123-124. The video

---

[6] Decedent's girlfriend, Tyreka Nichols, also arrived at the crime scene when police were on the scene and observed decedent lying on the ground with his legs in the street and upper body on the pavement. *N.T.* 11/4/14 at 52.
[7] Mr. Scott however testified that he did not witness the shooting, but only heard it. *N.T.* 11/5/14 at 11, 16, 18, 21, 23.

3

*Commonwealth v. Lawrence Custis*

footage showed defendant walking southbound on Lindenwood Street away from the crime scene immediately after the shooting, and just twenty-five (25) seconds before the first 911 call. *Id.*

Residents of the 1500 block of Lindenwood Street testified that approximately three weeks prior to the murder, they observed defendant initiate a verbal confrontation with decedent. *N.T.* 11/4/14 at 87-88; *N.T.* 11/5/14 at 117. While decedent and defendant were arguing, Michael Gough observed defendant holding a firearm near his leg and heard decedent tell defendant to "calm down." *Id.* Kevin Johnson testified that during the altercation, he heard defendant state to decedent "I'm getting tired of this. . . I should have shot you last month." *N.T.* 11/4/14 at 88. That verbal confrontation did not escalated to physical violence because one of decedent's family members stepped in between the two men and pushed them away from each other. *Id.* at 118.

Dr. Gary Lincoln Collins, Deputy Chief Medical Examiner, testified as the Commonwealth's expert in the field of forensic pathology. *N.T.* 11/5/2014 at 25, 28. Dr. Collins performed an autopsy of decedent and generated a report of his findings which were introduced at trial. *Id.* at 30. Dr. Collins concluded to a reasonable degree of medical certainty that the manner of death was homicide caused by multiple gunshot wounds. *Id.* at 31. Decedent sustained six perforating and penetrating gunshot wounds from his shoulder region down to his buttocks. *Id.* at 33-35. The first gunshot entered the top of decedent's right shoulder, traveled through the soft tissue and exited the front of his right arm, above his chest area. *Id.* at 35-36. The second gunshot wound, a fatal injury, was caused by a perforating bullet that entered defendant's body twice. *Id.* at 36-37. It first entered the right side of decedent's chest below his armpit, traveled across to the left side of his chest, passed through his right lung, heart, left lung, and exited his

4

left armpit before reentering decedent's body in his left arm where it was recovered. *Id.* The third gunshot wound was also a fatal injury caused by a perforating bullet that entered decedent's abdomen through his belly button. *Id.* at 37-38. This third bullet traveled though decedent's abdomen, striking and damaging his liver, before entering and exiting his chest where it caused severe internal bleeding. *Id.* Dr. Collins opined that after the second and third gunshot wounds decedent would have suffered pain until he bled out significantly and eventually became unconscious before death. *Id.* at 37-39.

The fourth gunshot wound was also a fatal injury caused when the bullet penetrated the left mid-region of decedent's back and traversed through soft tissue to the aorta, pancreas and stomach, where it was recovered above decedent's navel. *Id.* at 39. The fifth gunshot wound was caused when the bullet perforated the lower left side of decedent's back. *Id.* at 40. Similar to the path of the first bullet, this bullet traveled through decedent's back, striking his kidney, and exited the front left side of his abdomen, directly above his groin. *Id.* The sixth and final gunshot wound was caused by a penetrating bullet to decedent's left buttock where it was recovered lodged in soft tissue adjacent to his vertebral column. *Id.* Dr. Collins testified to a reasonable degree of medical certainty that decedent's injuries were consistent with a person walking away from a shooter while being shot, falling to the ground and being shot again multiple times. *Id.* at 42. Decedent was pronounced dead at the Hospital of the University of Pennsylvania on January 9, 2012 at approximately 1:16 p.m. *Id.* at 31.

The Crime Scene Unit (CSU) investigators recovered seven pieces of ballistics evidence from the crime scene and submitted it to the firearms identification unit for analysis. *N.T.* 11/4/2014 at 50. Ballistics evidence consisted of eight fired cartridge casings and projectiles that were recovered from the sidewalk and underneath a vehicle adjacent to decedent's body. *Id.* at

5

50-53. After inspection of the ballistics evidence, investigators determined that it was fired from a Speer Automatic .45 caliber weapon. *Id.* at 55-56. Some of the projectiles were recovered with traces of blood. *Id.* at 56.

Detective Gregory Welsh testified as the Commonwealth's expert in the field of firearms examination and identification. *N.T.* 11/5/2014 at 58-61. He prepared a report on the six fired cartridge cases and two bullet specimens from the crime scene that were received from CSU and three bullet specimens recovered from decedent's body during the autopsy. *Id.* at 59-61, 67. Detective Welsh testified that the fired cartridge casings and bullet specimens were manufactured by Speer and were fired from a .45 caliber automatic weapon. *Id.* at 66. He concluded that each bullet specimen, most of which contained blood and a tissue like substance, were from a type of expanding bullet which causes more damage than a typical bullet. *Id.* at 67-72. After reviewing all of the ballistics evidence, Detective Welsh concluded to a reasonable degree of scientific certainty that each bullet was fired from the same firearm. *Id.* at 72.

### III. STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

In accordance with PA. R.APP. PROC. 1925 (b), defendant raised the following issues in his Statement of Matters Complained of on Appeal.[8]

1. The lower court erroneously denied defense counsel's motion for mistrial where the Commonwealth committed a discovery violation. At trial, a Commonwealth witness testified that he heard the defendant tell decedent, "I should have shot you last month." This statement was not provided to defense at any point even though the Commonwealth witness testified that he had relayed this information to the district attorney prior to trial.
2. The lower court erroneously instructed the jury that the defendant fled from the police and that such behavior tends to show that a person is conscious of guilt. This instruction was improper in this case where the police made minimal efforts to find the defendant and apprehend him, without incident, on their second attempt.

---

[8] The statement below was taken verbatim from defendant's filed Statement of Errors.

6

*Commonwealth v. Lawrence Custis*

3. The lower court erroneously overruled defense counsel's objection during the prosecutor's closing argument when the prosecutor indicated on several occasions that this is "our community" while exhorting the jurors to do the right thing. The prosecutor's statements were improper as they asked the jurors to avenge the crime generally instead of relying on the facts of the case.

## IV. DISCUSSION

### A. Defendant's Motion for a Mistrial

Defendant first claims that this court "erroneously denied [his] motion for mistrial where the Commonwealth committed a discovery violation." Statement of Errors ¶ 1. This claim lacks merit.

Under Pennsylvania law, "[w]hen an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial. . . .Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." PA. R.CRIM. PRO. 605. "Appellate courts generally review the grant or denial of discovery requests for an abuse of discretion." *Commonwealth v. Fleming*, 794 A.2d 385, 387 (Pa. Super. 2002) "[A] discovery violation does not automatically warrant relief in the form of a new trial." *Commonwealth v. Hood*, 872 A.2d 175, 181 (Pa. Super. 2005). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Fleming*, 794 A.2d at 387. Specifically regarding denial of a motion for mistrial pursuant to a discovery violation, the rule states the following:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when

applicable, permit the defendant's attorney to inspect and copy or photograph such items.

. . .

> (b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made *that is in the possession or control of the attorney for the Commonwealth*;

. . .

**(D) Continuing Duty to Disclose.** If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

**(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, *the court may order such party to permit discovery or inspection*, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, *or it may enter such other order as it deems just under the circumstances.*

PA. R.CRIM. PRO. 573 (emphasis added). It is however important to realize that "[t]he Commonwealth does not violate Rule 573 [discovery rules] when it fails to disclose to the defense evidence that it does not possess and of which it is unaware." *Commonwealth v. Collins*, 598 Pa. 397, 424 (2008).

Here, defendant requested a mistrial after Kevin Johnson attributed the following statement to defendant: "I'm getting tired of this, this and that. I should have shot you last month[.]" *N.T.* 11/4/14 at 88. Defendant contends that the prosecutor committed a discovery violation by not providing notice of the statement to defense counsel before trial. *Id.* The prosecutor, however, countered stating that she was not aware of the statement or that it would be made during Mr. Johnson's testimony. *Id.* at 91. The prosecutor further assured this court that Mr. Johnson was properly prepared before his testimony and made several corrections to his statement. *Id.* However, he never mentioned the additional statement allegedly made by

8

*Commonwealth v. Lawrence Custis*

defendant. *Id.* The prosecutor further stated that she satisfied discovery requirements, and provided defense counsel with Mr. Johnson's statement, address and contact information, affording counsel the opportunity to interview the witness. *Id.*

In response to defense counsel's request for a mistrial, this court further inquired into the prosecutor's knowledge of the statement at issue and asked the prosecutor several questions on the record, beginning with "Did you [prosecutor] have any knowledge that this man [Mr. Johnson] would testify that defendant stated, ". . . I should have shot you a month ago?"[9] *Id.* at 91. After the prosecutor responded "No" to the first inquiry, this court explained the unfortunate reality that cases are often disrupted by witnesses who either over share information or make

---

[9] The relevant potion of this court's inquire into the prosecutors knowledge of the undisclosed statement is as follows:

> THE COURT: As to Mr. Schrading's position that this is a discovery violation, the first **question would be**: Did you have knowledge that this man would testify that defendant stated, "I should have shot you a month ago?"
> MS. CUDJIK: No
> THE COURT: Yesterday morning.
> MS. CUDJIK: No
> THE COURT: Have you ever been provided a statement to that affect?
> MS. CUDJIK: No.
> THE COURT: What is your position with respect to the defense request for a mistrial?
> MS. CUDJIK: With respect to a mistrial, this is not a discovery violation, first of.
> Secondly, this is appropriate evidence where they can cross-examine the witness on this issue. It doesn't rise to the level of prejudice that would warrant a mistrial, especially in light of the fact there was no discovery violation.
> . . .
> THE COURT: Addressing the matter at hand, absent knowledge on the part of a Commonwealth agent that there was a statement from this witness to that effect, I cannot conclude this is a discovery violation. Witnesses often say something other than what's in their written account. That's fair game for cross-examination. I don't see how this is different.
> If this were an agent of the state, we would have a very different analysis, but to my mind, it's not a discovery violation. It certainly isn't a basis for mistrial.

*N.T.* 11/4/14 at 92.

9

*Commonwealth v. Lawrence Custis*

statements that were not previously disclosed. *Id.* at 92-94. Further, this court allowed both counsel to question the witness off the record regarding whether he intended to testify that defendant made any additional statements. *Id.* at 96-99. In essence, this court permitted counsel to conduct a discovery hearing of Mr. Johnson. *Id.* at 99. Thereafter, defense counsel was asked if there was a request for any other form of relief other than a mistrial and none was requested. *Id.* at 94, 99. This court then denied defendant's request for a mistrial. *Id.*

In *Commonwealth v. Sullivan,* a Commonwealth witness, while testifying on direct examination to his recollection of defendant Sullivan's statements to the police after the incident, offered a previously undisclosed inculpatory statement. 820 A.2d 795, 801 (Pa. Super. 2003). Defendant did not immediately object to the statement, but at the commencement of trial the next day, he moved for a mistrial. The prosecutor admitted that the statement was not disclosed during discovery because they were unaware of it until the witness testified. *Id.* at 801. The trial court denied defendant's motion and offered to strike the testimony and/or provide a curative instruction, which defendant rejected. *Id.* On appeal, the Superior Court held that because "[t]he Commonwealth was not in possession of the disputed statement, they had no obligation to provide it to the defense." *Id.* at 804. The court further noted that where "[t]he Commonwealth turned over all required discovery, no discovery violation warranting a remedy occurred."*Id.*

Here, after questioning the prosecutor, this court was satisfied that the Commonwealth's attorney was unaware of the statement's existence and did not know that Mr. Johnson's testimony would include a previously undisclosed inculpatory statement. Thus, because the prosecutor was unaware of the disputed statement, this court properly found that there was no discovery violation. In light of the above, this court properly denied defendant's request for a mistrial.

10

## B. The Jury Instruction was Proper

Defendant's second claim is that this court "erroneously instructed the jury that [he] fled from the police and that such behavior tends to show that a person is conscious of guilt." Statement of Errors ¶ 2. This claim misstates this court's jury instruction and lacks merit.

"The trial judge may give instructions to the jury before the taking of evidence or at any time during the trial as the judge deems necessary and appropriate for the jury's guidance in hearing the case." PA. R.CRIM. PROC. 647. [T]he trial court has broad discretion in phrasing its instructions as long as it presents the law to the jury clearly, adequately, and accurately. *Commonwealth v. Garcia*, 847 A.2d 67, 73 (Pa. Super. 2004), *aff'd*, 585 Pa. 160 (2005).

> A flight instruction is proper when: a person has reason to know he is wanted in connection with a crime, and proceeds to flee or conceal himself from the law enforcement authorities, such evasive conduct is evidence of guilt and *may* form a basis, in connection with other proof, from which guilt may be inferred."

*Commonwealth* v. *Thoeun Tha*, 64 A.3d 704, 714 (Pa. Super. 2013) (emphasis added). Moreover, a "defendant's knowledge may be inferred from the circumstances attendant [to] his flight." *Commonwealth v. Johnson*, 576 Pa. 23, 53 (2003).

During the charging conference, defense counsel objected to the Commonwealth's request for a jury instruction on consciousness of guilt. *N.T.* 11/6/2014 at 70. The Commonwealth requested the instruction be given on the "flight and concealment" of defendant in leaving the neighborhood the day of the shooting and not returning, based on officers and detectives inability to locate him after numerous attempts. *Id.* The court instructed the jury as follows:

> There was evidence, including the testimony of Officer Ivy and, members of the homicide unit and intelligence unit of the Philadelphia Police Department that tended to show that the defendant left his

11

neighborhood after the shooting in this case. The Commonwealth contends that he fled or hid from police.

The credibility, weight and affect of the testimony is for you to decide. Generally speaking, when a crime has been committed and a person thinks he is or may be accused of committing it and he flees or conceals himself, such flight or concealment is a circumstance tending to show the person is conscious of guilt. Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or hide for some other motive and may do so even though innocent.

Whether the evidence of flight or concealment in this case should be looked at as tending to show consciousness of guilt depends upon the facts and circumstances of this case and especially upon motives that may have prompted the flight or concealment.

You may not find the defendant guilty solely upon the basis of flight or concealment.

*N.T.* 11/6/2014 at 147-148. 3.14 (Crim) Consciousness of Guilt, Flight, or Concealment as Showing, Pa. SSJI (Crim), §3.14 (2005) (alteration in original).

Here, the Commonwealth's witnesses established that defendant was a frequent visitor of the 1500 block of Lindenwood streets, and would often be seen out and about in the neighborhood where he grew up. It is irrefutable that the shooting and death of decedent occurred in broad daylight at a time when the neighborhood was teeming with individuals, some of whom identified defendant as being present at the scene. The Commonwealth presented compelling evidence that after the shooting took place, despite several attempts, various officers and detectives were unable to locate defendant anywhere in the vicinity of the scene of the crime. In fact, defendant was not apprehended until several months after the incident on the other side of town, in the North Philadelphia section of the city. The circumstances surrounding defendants evasion from law enforcement authorities is sufficient to infer defendant's knowledge that he was wanted in connection with the crime and warranted instruction to the jury that such conduct "*may* form a basis, in connection with other proof, from which guilt may be inferred." Because the jury instruction included language nearly identical to the standard instruction, and the factual

12

circumstances of the case warranted, this court properly instructed the jury.

## C. The Court Properly Overruled Defendant's Objection

Defendant's final claim is that this court "erroneously overruled defense counsel's objection during the prosecutor's closing argument when the prosecutor indicated on several occasions that this is "our community." Statement of Errors ¶ 3. Defendant asserts that "[t]he prosecutor's statements were improper as they [allegedly] asked the jurors to avenge the crime generally instead of relying on the facts of the case." *Id.* This claim lacks merit.

"In reviewing a claim of improper prosecutorial comments, [the Superior Court's] standard of review is whether the trial court abused its discretion." *Commonwealth v. Noel*, 53 A.3d 848, 858 (Pa. Super. 2012) *aff'd*, 104 A.3d 1156 (Pa. 2014). "It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted." *Commonwealth v. Melvin*, 103 A.3d 1, 26 (Pa. Super. 2014).

> The Pennsylvania Supreme Court has stated that "[t]he essence of a finding of prosecutorial misconduct is that the prosecutor, a person who holds a unique position of trust in our society, has abused that trust in order to prejudice and deliberately mislead [the factfinder]." *Commonwealth v. Pierce* [537 Pa. 514], 645 A.2d 189, 197 (Pa.1994).... Prosecutorial misconduct will justify a new trial where the unavoidable effect of the conduct or language was to prejudice the factfinder to the extent that the factfinder was rendered incapable of fairly weighing the evidence and entering an objective verdict. If the prosecutorial misconduct contributed to the verdict, it will be deemed prejudicial and a new trial will be required.

*Commonwealth v. Melvin*, 103 A.3d 1, 26 (Pa. Super. 2014) (quoting *Commonwealth v. Francis*, 445 Pa. Super. 353, 665 A.2d 821, 824 (1995)). "It is well settled that a prosecutor has considerable latitude during closing arguments and his or her statements are fair if they are

13

supported by the evidence or use inferences that can reasonably be derived from the evidence." *Commonwealth v. Noel*, 53 A.3d 848, 858 (Pa. Super. 2012), *aff'd*, 104 A.3d 1156 (Pa. 2014).

Here, there was no unavoidable effect of the prosecutor's statement that would prejudice the jury to develop a fixed bias and hostility toward the defendant. Given the context of the case and in an attempt to convince the jurors to appreciate their duty, the prosecutor referred to the impact of the crime on "our community." *N.T.* 11/6/2014 at 97-121.[10] Defense counsel argued that the prosecutor's repeated reference to "our community" improperly caused the jurors to look beyond the case by appealing to their fears regarding the community in general. *Id.* at 123. Defense counsel further asserted that because jurors are solely charged with considering the evidence of the specific case at hand, consideration of the notion of "our community" was inappropriate. *Id.* The prosecutor responded to those accusations by explaining that in representing the entire Commonwealth of Pennsylvania, specifically the community of Philadelphia, and not only the decedent in this case, her emphasis was on the jury's duty to

---

[10] The prosecutor's statement in context is as follows:

> **MS. CUJDIK:** . . . On Tuesday I stood before you. I said this was about a neighborhood. It's about a death, but also about a neighborhood, a community. *It's about our community*, not just the people that live on Lindenwood Street, not just Will's family, not just the officers who are caused with protecting that community. *It's about our community.*
> 　　　It's about never giving up hope that when somebody in our community is gunned down and killed that people will do the right thing, that they will come in here and sit in that witness stand and sit there before members of their community and do the right thing.
> 　　. . .
> 　　　That neighborhood, that family, that community, *our community* is forever changed because of what he did, the choice that he made on that day. He chose to pull the trigger, over and over, and over again.
> 　　. . .
> 　　　We are all affected by it, our community, every single one of us.

*N.T.* 11/6/2014 at 69 (emphasis added).

14

*Commonwealth v. Lawrence Custis*

render a verdict as a member of the Philadelphia community affected by this specific crime was not improper. *Id.* at 124, 126-127.[11]

In overruling defendant's objection, this court relied heavily on precedent to conclude that the prosecutor did not engage in prosecutorial misconduct. This court stated:

> In pertinent part, the [*Hall*] opinion contains the following language: As noted above, comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. Also, a prosecutor's comments must be examined within the context in which they were made. Moreover, a jury's determination must be based solely upon the evidence and not a prosecutor's emotional appeal or crusading incitation to make a statement to the judicial system or to convince the jury that a certain verdict is necessary as a form of retribution for the ills inflicted on society by a certain class of people.

*N.T.* 11/6/2014 at 128 (quoting *Commonwealth v. Derrick Hall*, 549 Pa. 269, 294, 701 A.2d 190, 202-03). Examining the context in which the prosecutor's comment was made, there was no

---

[11] Relevant portions of the prosecutors argument are as follows:

> MS. CUJDIK: . . .Moreover, my opening statement about this being a community and this is something that affects the community. I represent the Commonwealth of Pennsylvania; not just William Street.
> Their duty is to be a member of the community and to render a verdict as a member of this community. It's important to them not only because of what happened, but it's a community affected by this. It's all of Philadelphia affected by this.
> My remarks did not insinuate the state of crime in Philadelphia. It's a simple remark about community.
> I disagree with counsel why that would have any connotation or insinuation that they should reach further beyond this case.
> I ask that your Honor overrule the objection. I don't see any need for any cautionary instruction on any of the issues.
> . . .
> Never once did I utter the words "send a message" or make comments about the state of affairs of the state of violence in the Commonwealth of Pennsylvania and ask them to send a message to this defendant that we won't allow that or stand for that.

*N.T.* 11/6/2014 at 124, 126.

15

*Commonwealth v. Lawrence Custis*

inkling of an underlying "statement" to the judicial system or attempt to convince the jury that a verdict of guilt was necessary retribution for the ills inflicted on society by a certain class of people.

In light of this court's finding, the prosecutor's comment did not deprive defendant of a fair trial by prejudicially rendering the jury incapable of fairly weighing the evidence and entering an objective verdict. The jury properly weighed the evidence and rendered a verdict in accordance therewith. Therefore, this court did not abuse its discretion in denying defendant's request for a mistrial.

## V. CONCLUSION

For the aforementioned reasons, this court's judgment of sentence should be AFFIRMED.

BY THE COURT

May 14, 2015

SANDY L.V. BYRD, J.

16

*Commonwealth v. Lawrence Custis*