J-S56009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LANDARE JELMAIK HINES, | |
| Appellant | No. 1730 MDA 2015 |

Appeal from the Judgment of Sentence Entered May 21, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000641-2014

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED OCTOBER 04, 2016**

Appellant, Landare Jelmaik Hines, appeals from the judgment of sentence of an aggregate term of 8 to 16 years' incarceration, imposed after a jury convicted him of various drug-related offenses.  After careful review, we affirm.

Briefly, Appellant's convictions stemmed from evidence that he and two women, Tiffany Ingram and Sarah Frank, conspired to sell heroin out of a residence at 10 Fredericksburg Court in State College, Pennsylvania. During an investigation of these individuals in March of 2014, Sarah Frank delivered heroin to a confidential informant on two occasions, and to an undercover detective on a third.  Based on Frank's deliveries, as well as

---

[*] Former Justice specially assigned to the Superior Court.

additional information acquired by police during the investigation, a search warrant was obtained for Ingram's residence. On March 28, 2014, when the search warrant was executed, police discovered Appellant inside Ingram's home. Appellant was taken into custody and searched, revealing a small amount of marijuana and a key to a safe where narcotics were found. A search of Ingram's residence revealed narcotics, drug paraphernalia, and evidence indicating that Appellant was residing there.

Following Appellant's arrest, he was charged with various drug-related offenses. On December 16, 2014, Appellant filed a pretrial motion to suppress the evidence recovered from his person after he was detained and searched. Following a hearing on that motion, the court denied it. Appellant's jury trial commenced in March of 2015, and at the close of that proceeding, the jury convicted him of possession with intent to deliver (PWID), 35 P.S. § 780-113(a)(30); possession of a controlled substance, 35 P.S. § 780-113(a)(16); possession of a small amount of marijuana for personal use, 35 P.S. § 780-113(a)(31); possession of drug paraphernalia, 35 P.S. § 780-113(a)(32); and conspiracy to commit PWID, 18 Pa.C.S. § 903.

On May 21, 2015, Appellant was sentenced to an aggregate term of 8 to 16 years' incarceration. He filed a timely post-sentence motion, which the trial court denied after conducting a hearing. Appellant filed a timely notice of appeal, and also timely complied with the court's order to file a Pa.R.A.P.

1925(b) concise statement of errors complained of on appeal. Herein, he presents four issues for our review:

> I. Did the trial court err in granting the Commonwealth's request to prohibit counsel for [Appellant] from using an analogy of reasonable doubt during closing argument?
>
> II. Did the trial court err in refusing to grant a mistrial based upon statements made by the prosecutor amounting to an improper shifting of the burden [of proof], as well as statements made by the Commonwealth directed towards counsel for [Appellant]?
>
> III. Did the trial court err in admitting unrelated robbery evidence at the time of [Appellant's] trial?
>
> IV. Did the trial court err in denying [Appellant's] motion to suppress on the basis that, first, [Appellant] was unlawfully seized, and secondly, the search of [Appellant's] person was unconstitutional?

Appellant's Brief at 11 (unnecessary capitalization and emphasis omitted).

Appellant's first issue challenges the trial court's decision to preclude defense counsel from presenting, in closing arguments, an analogy to explain reasonable doubt. Appellant does not set forth, in his appellate brief, the content of the proposed analogy that the court refused to permit. Rather, he simply refers this Court to his post-sentence motion, where he set forth the content of the proposed analogy, as follows:

> Some of you jurors may have children or grandchildren who like to ice skate. If on one occasion you go to the local pond and there are a number of children skating on the pond and you see no cracks in the ice, would you have any hesitation or doubt about allowing your child to skate on the ice[?] If you go back to the pond two weeks later and there are fewer children on the pond and you see some small cracks on the ice, would any of you have a hesitation to allow your child to skate on the ice[?] If two weeks later you went back to the pond and there were no

children skating on the pond and there were numerous cracks in the ice, would any of you have any hesitation to allow your child to skate on the ice[?] Now let's look for cracks in the Commonwealth's case.

Post-Sentence Motion, 5/29/15, at 4.

When defense counsel began stating this analogy in closing arguments, the Commonwealth asked for a side-bar, and objected to the analogy on the basis that it could "provoke[] fear" in the minds of the jurors. N.T. Trial, 3/31/15, at 38. The trial court ultimately sustained the Commonwealth's objection and defense counsel was not permitted to use the analogy. *Id.* at 39. Defense counsel then continued to address the jury as follows:

> [Defense Counsel]: As far as reasonable doubt, I'm going to let the Judge again read the instructions to you, but what I want to tell you is that, again, ["]could have,["] ["]might have,["] ["]possibly["] isn't proof beyond a reasonable doubt by any stretch of the imagination.
>
> Again, I gave you sort of an analogy when I was in my opening [statement] that all you have to do is hesitate, hesitate before you act in a matter of importance in your own affairs. That's reasonable doubt, because if you go back to the jury room and you have this hesitation, then your obligation and your duty is to acquit [Appellant].

*Id.* at 39-40.

Now, on appeal, Appellant challenges the court's ruling precluding him from presenting the ice skating analogy, relying on this Court's decision in **Commonwealth v. Jones**, 858 A.2d 1198 (Pa. Super. 2004), and our Supreme Court's decision in **Commonwealth v. Malone**, 47 A.2d 445 (Pa. 1946). As Appellant acknowledges, both of those cases discuss the

propriety of the *trial court's* using illustrations to explain legal concepts in instructing the jury and, thus, are inapplicable on their face. Appellant argues, however, that because the court is permitted to use illustrations and analogies in instructing the jury, "[t]here is no legitimate reason … why trial counsel should be precluded from doing the same." Appellant's Brief at 21.

Appellant's underdeveloped argument is unconvincing. Notably, the trial court provided a jury instruction regarding reasonable doubt that Appellant did not challenge below, and does not attack herein. Additionally, as evident by the passage of Appellant's closing argument set forth *supra*, he was not wholly precluded from explaining reasonable doubt to the jury. Instead, the court only barred Appellant from using a specific analogy that invited jurors to imagine their children or grandchildren walking on a frozen pond with cracked ice. Appellant's argument that his counsel should have been permitted to use this analogy simply because a trial court is allowed to use illustrations in instructing the jury does not convince us the court abused its discretion.

In Appellant's next issue, he argues that the court erred by denying his objections, and his request for a mistrial, based on certain improper comments made by the Commonwealth during closing arguments. This Court has explained:

> The trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred,

- 5 -

and if so, ... assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (quoting *Commonwealth v. Lettau*, 955 A.2d 360, 363 (Pa. Super. 2008) (internal citations and quotations omitted)).

"The remedy of a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Judy*, 978 A.2d at 1019 (citations omitted).

*Commonwealth v. Ragland*, 991 A.2d 336, 340 (Pa. Super. 2010).

In this case, Appellant cites three separate instances of allegedly improper comments by the prosecutor during his closing argument. First, Appellant takes issue with the prosecutor's suggesting that defense counsel deliberately asked Sarah Frank "compound questions" to confuse Frank and make her seem incredible. *See* N.T. Trial, 3/31/15, at 74. Appellant also challenges the prosecutor's statement: "You don't allow [defense counsel] to come up here and talk to you about random facts, out of sequence, in an attempt to confuse you, because really that's all that was." *Id.* at 70. Appellant avers that these comments by the Commonwealth improperly "question[ed] the veracity of [defense] counsel" and were not appropriate in closing arguments. Appellant's Brief at 23.

However, Appellant does not develop any meaningful argument that these comments, alone, deprived him of a fair trial. Rather, he contends

that these remarks, *combined* with another statement by the prosecutor, necessitated a mistrial. In that third comment, the prosecutor stated, "Why didn't [defense counsel] show you that text message[?]" N.T. Trial, 3/31/15, at 93. According to Appellant, this remark by the prosecutor impermissibly shifted the burden of proof to the defense, and raised an "inference[] that counsel for [Appellant] was attempting to hide something and that [the defense] had an obligation to present certain documents to the jury[, which was] prejudicial to [Appellant]." Appellant's Brief at 24. Appellant asserts that "[t]his statement made by the [prosecutor], coupled with the various references to counsel for [Appellant,]" discussed *supra*, "should have resulted in the [c]ourt['s] declaring a mistrial." **Id.**

We disagree. Notably, Appellant completely omits the fact that, after the trial court denied his motion for a mistrial, it provided the jury with a cautionary instruction regarding the Commonwealth's burden of proof. Specifically, shortly after the Commonwealth's allegedly burden-shifting remark, the court stated to the jury: "I just want to point out to you [that] although [the prosecutor is] making an argument, you must always remember the burden is always on the Commonwealth. It does not shift to the defense at any point to put in evidence or do anything. The burden is on the Commonwealth." N.T. Trial, 3/31/15, at 96-97. Appellant did not argue at trial, and does not assert on appeal, that the court's cautionary instruction was inadequate to cure the purported prejudice he suffered from the prosecutor's challenged comment. We "presume[] that juries follow the

court's instructions as to the applicable law." ***Commonwealth v. Hawkins***, 701 A.2d 492, 503 (Pa. 1997) (citation omitted). Accordingly, we conclude that Appellant's second issue does not warrant a new trial. ***See id.*** (finding that the prosecutor's ostensibly burden-shifting comment in closing argument did not warrant a mistrial, as "any prejudicial effect from the prosecutor's statement was cured by the trial court's general cautionary instruction to the jury following closing arguments that none of the closing arguments were evidence and that the Commonwealth always bore the burden of proof and that the defendant did not have to prove that he is not guilty").

In Appellant's third issue, he challenges certain testimony admitted by the Commonwealth. ***See*** Appellant's Brief at 24-25. However, at the close of his argument, Appellant acknowledges that a "limiting instruction" was provided by the court. ***Id.*** at 25. He then states: "Given the fact that there was a limiting instruction and considering applicable cases, your undersigned is withdrawing this issue." ***Id.*** Accordingly, we do not address this claim.

In Appellant's last issue, he challenges the trial court's denial of his motion to suppress evidence recovered after he was arrested and searched during the execution of the search warrant at Tiffany Ingram's residence. Our standard of review for denial of a suppression motion is as follows:

> In reviewing an order from a suppression court, we consider the Commonwealth's evidence, and only so much of the defendant's evidence as remains uncontradicted. We accept the suppression court's factual findings which are supported by the evidence and

reverse only when the court draws erroneous conclusions from those facts.

***Commonwealth v. Hoopes***, 722 A.2d 172, 174-75 (Pa. Super. 1998).

Before addressing Appellant's specific arguments, we summarize the pertinent testimony presented at the suppression hearing. There, Detective Donald Paul of the State College Police Department was the Commonwealth's sole witness. Detective Paul testified regarding how his investigation of Sarah Frank, Tiffany Ingram, and Appellant culminated in the detective's obtaining a search warrant for the residence at 10 Fredericksburg Court. He explained that beginning in 2013, police began investigating Frank and Ingram after receiving information that the women were selling heroin from that residence. N.T. Suppression Hearing, 2/17/15, at 7-8. During the investigation, police began to suspect "that there was [also] a male source providing [the] heroin out of that residence, … not just Tiffany Ingram." ***Id.*** at 10. Detective Paul testified that he conducted a "background investigation" of Ingram, during which he discovered that she associated with Appellant. ***Id.*** at 9. Detective Paul obtained a photograph of Appellant, and also ran a background check on Appellant. ***Id.*** at 10. The background check revealed that Appellant had an outstanding warrant for his arrest for a 2013 parole violation. ***Id.***

Subsequently, Detective Paul obtained a search warrant for 10 Fredericksburg Court, and police executed the warrant on March 28, 2014. ***Id.*** at 11. Detective Paul testified that upon entering the residence, he and Sergeant Tyler Jolley "started heading up the stairs to the second floor

where [they] encountered [Appellant] on a landing just at the top of the second floor." *Id.* at 13. Detective Paul stated that Appellant "was taken into custody right there at the top of the stairs." *Id.* The detective went on to describe an initial search of the residence, which revealed Tiffany Ingram in the master bedroom, men's clothing in a closet in the master bedroom, and marijuana and drug paraphernalia in plain-view in that bedroom. *Id.* at 14. Ingram and Appellant were then searched, and on Appellant's person police discovered a small amount of marijuana and the key to a safe. *Id.* at 15. Officers searched the safe, which was found under the mattress in the master bedroom. *Id.* Inside the safe, they discovered a large quantity of heroin. *Id.* Officers also found a large quantity of cash, and documents in Appellant's name, in the closet where the men's clothing was stored. *Id.* at 16.

Presently, Appellant concedes that the search warrant for the residence was valid, and that there was an active warrant out for his arrest when the police searched the residence on March 28, 2014. Nevertheless, he argues, *inter alia*, that the suppression court erred by concluding that his arrest was legal because of his outstanding arrest warrant where the Commonwealth did not present the testimony of Sergeant Jolley, the officer who allegedly arrested Appellant. According to Appellant, because Sergeant Jolley did not take the stand, the Commonwealth did not prove that that officer *knew* about Appellant's arrest warrant prior to his placing Appellant in custody. Appellant further argues that it cannot be inferred that Sergeant

Jolley shared Detective Paul's knowledge of the arrest warrant under the 'collective knowledge' doctrine. *See* Appellant's Brief at 30 (relying on *Commonwealth v. Yong*, 120 A.3d 299 (Pa. Super. 2015), to argue that the collective knowledge doctrine applies only where there is evidence of explicit communication between the officer with knowledge to support probable cause to arrest (here, Detective Paul) and the arresting officer (here, Sergeant Jolley)).[1]

Preliminarily, our review of the record demonstrates that Appellant did not raise, before the suppression/trial court, his argument that Sergeant Jolley lacked probable cause to arrest him because the officer did not, himself, know about Appellant's active arrest warrant. We acknowledge that the record of the suppression hearing indicates that defense counsel only became aware of that warrant for Appellant's arrest during Detective Paul's testimony. Thus, it is acceptable that Appellant did not assert the challenge

_____

[1] We note that our Supreme Court granted the Commonwealth's petition for allowance of appeal in *Yong*, stating the issue as follows:

> Did the Superior Court—in contravention of the United States Supreme Court precedent and overwhelming supporting authority from this Court, the Superior Court itself, and virtually every federal and state court—err in holding that the Fourth Amendment does not permit a member of a close group of officers working as a team to act on the collective knowledge of that team, absent a directive or instruction issued by an officer who possesses probable cause?

*Commonwealth v. Yong*, 137 A.3d 573 (Pa. 2016).

to his arrest based on Sergeant Jolley's knowledge (or lack thereof) in his written motion to suppress filed on December 16, 2014. We also do not find waiver based on defense counsel's failure to orally raise this claim at the suppression hearing, given that counsel had only then discovered that Appellant had an active arrest warrant.

However, we cannot overlook Appellant's failure to present his claim regarding Sergeant Jolley's alleged lack of knowledge at some point *after* the suppression hearing, during trial, following his conviction, or in his post-sentence motion. Notably, after the suppression hearing in February of 2015, Appellant's counsel filed an additional pretrial motion on March 5, 2015, requesting that the court reconsider its denial of a different suppression issue raised in his December 16, 2014 suppression motion. In that March 5th motion, Appellant did not challenge the legality of his arrest based on Sergeant Jolley's lack of knowledge of the arrest warrant. Appellant also failed to raise this claim in his post-sentence motion. Therein, Appellant challenged the court's denial of his motion to suppress by simply 'incorporating' the arguments set forth in his December 16, 2014 motion to suppress, which, again, made no mention of Sergeant Jolley's purported lack of knowledge of Appellant's arrest warrant. **See** Post-Sentence Motion, 5/29/15, at 5. Appellant also did not mention any issue pertaining to Sergeant Jolley's knowledge at the hearing on his post-sentence motion. Because Appellant did not present the specific argument he raises herein to the suppression/trial court, we conclude that it is not preserved for our

- 12 -

review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

We also point out that Appellant's Rule 1925(b) statement presented his suppression claim as follows: "The [t]rial [c]ourt erred in denying [Appellant's] [m]otion to [s]uppress." Pa.R.A.P. 1925(b) Statement, 10/28/15, at 2. This boilerplate claim is insufficient to preserve the specific suppression argument Appellant now presents on appeal; therefore, we would deem Appellant's claim waived on this basis, as well. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").[2]

_____

[2] In any event, we would deem Appellant's suppression issue meritless. Appellant's entire argument is premised on the fact that Sergeant Jolley arrested him. We acknowledge that the suppression court at least suggested this finding of fact in its opinion denying Appellant's motion to suppress. *See* Suppression Court Opinion, 2/26/15, at 5 (stating that "Detective Paul was not the officer who actually placed [Appellant] into custody"). However, limiting our review to the record of the suppression hearing, we cannot find support for that factual finding. *See In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013) (holding that an appellate court's scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing). As stated *supra*, at the suppression hearing, Detective Paul testified that upon entering the residence, he and Sergeant Jolley went up the stairs *together* and discovered Appellant at the top. N.T. Suppression Hearing at 13. Detective Paul then testified that, "[Appellant] was taken into custody right there at the top of the stairs. I then entered the master bedroom where Tiffany Ingram was laying on the bed…." *Id.* This testimony by the detective was the only evidence pertaining to the moment of Appellant's arrest, and it is unclear regarding which officer placed Appellant in custody. Indeed, Detective Paul's testimony suggests that Appellant's arrest was effectuated by *both* him and Sergeant Jolley. Thus, because the suppression record does not support the court's conclusion that Sergeant Jolley arrested Appellant, we would deem

*(Footnote Continued Next Page)*

Because Appellant has waived his challenge to the suppression court's determination that the outstanding warrant for Appellant's arrest validated his arrest and subsequent search, we affirm the suppression court's decision in that regard.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/4/2016

*(Footnote Continued)* ————————

meritless Appellant's challenge to the legality of his arrest based on what Sergeant Jolley did (or did not) know about the active warrant for Appellant's arrest.