J-S10034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANGELO MALDONADO | : | |
| | : | |
| Appellant | : | No. 1659 EDA 2017 |

Appeal from the Judgment of Sentence April 7, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009674-2015

BEFORE:  BOWES, J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 13, 2018**

Appellant Angelo Maldonado appeals from the judgment of sentence entered based upon his jury-trial convictions for first-degree murder[1] and possessing an instrument of crime (PIC).[2]  Appellant asserts that his conviction for first-degree murder was against the weight of the evidence because the death occurred when he was highly intoxicated and in the context of a physical altercation.  Appellant additionally asserts that a mistrial should have been declared because the prosecutor engaged in prosecutorial misconduct during closing arguments.  We affirm.

On August 8, 2015, John Kyser and a group of friends were playing darts and shooting pool at Owen's Bar, located at Cottman Avenue and Roosevelt

_____

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. § 907.

Boulevard, Philadelphia. Kyser had never seen Appellant prior to that night, but Appellant joined in the group's pool game and Appellant and Thomas Ewing, Jr. (Decedent) were on the same pool team. Appellant and Decedent did not appear to have any conflict between them during the pool game.

At approximately 3:00 a.m., Decedent and two of his companions stole several bottles of liquor and fled through the rear entrance of the bar. Appellant gave chase in his pickup truck. Appellant found Decedent in a nearby alley, exited his truck, and stabbed Decedent a dozen times, one of which hit Decedent's heart. Kyser observed Appellant "swinging on [Decedent]." N.T. Trial Vol. 1, 4/5/17, at 18. Nicholas Lawrence was with Kyser and also saw Appellant on top of Decedent. A separate group of people, including Logan Welch and Brendan Sharp, observed Appellant swinging at Decedent and heard somebody yell that there was a knife or "he is stabbing me." *Id.* at 146.

Appellant's neighbor, Christopher Hinkle, observed Appellant in his driveway at approximately 3:30 a.m. on the night of the murder. Hinkle testified that Appellant had a gash in his leg and was "pretty intoxicated." N.T. Trial Vol. 1, 4/6/17, at 31. Appellant admitted to being in a scuffle on the ground with another man and continuously repeated, "I really messed up this time." *Id.*

Appellant was tried by a jury from April 3, 2017 to April 7, 2017. Appellant sought a mistrial because the prosecutor indicated during closing arguments that Decedent was "gutted like a pig." *Id.* at 125. The trial court

instructed the prosecutor not to use that phrase again and denied the request for a mistrial.

At the conclusion of the trial, on April 7, 2017, Appellant was convicted of first-degree murder and PIC. Appellant was sentenced the same day to a term of life imprisonment without parole for first-degree murder and a concurrent term of 2½ to 5 years' incarceration for PIC. On April 8, 2017, Appellant filed a timely post-sentence motion, which the trial court denied without a hearing on April 24, 2017. Appellant filed a notice of appeal to this Court on May 20, 2017. Thereafter, in response to an order of the trial court, Appellant filed a timely statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review:

1. Was [Appellant's] conviction for first[-]degree murder against the weight of the evidence since the evidence clearly established that the killing in question occurred when [Appellant] was highly intoxicated and in the context of a physical argument?

2. Did the [trial c]ourt err in denying [Appellant's] request for a mistrial when the prosecutor committed prosecutorial misconduct during closing arguments by stating Appellant had[] "gutted [Decedent] like a pig"?

Appellant's Brief at 3.

In his first issue, Appellant asserts that his first-degree murder conviction is against the weight of the evidence. In support of his contention that he lacked specific intent to kill, Appellant asserts that he

expressed no animosity toward the decedent throughout the evening in question. The subsequent stabbing occurred during a

- 3 -

physical fight[3] in which [Appellant] was "very intoxicated" and "not coherent." Indeed, within five minutes of [Appellant] coming into contact with Christopher Hinkle, [Appellant] ha[d] lost consciousness."

Appellant's Brief at 10. According to Appellant, the finding of specific intent to kill based upon these facts shocks the conscience. *Id.* at 11.

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014) (citation omitted). Additionally,

[a] verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the factfinder. Rather, a new trial is warranted only when the jury's verdict is **so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail**. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Tharp*, 830 A.2d 519, 528 (Pa. 2003) (citations omitted).

"[A] showing of voluntary intoxication can negate the intent necessary for a conviction of first-degree murder and reduce the crime of murder from first to third degree." *Commonwealth v. Fletcher*, 861 A.2d 898, 907 (Pa. 2004). However, the evidence presented "must show that the defendant was

---

[3] To the extent Appellant implies a self-defense argument by noting the physical nature of the altercation, it is not developed in his brief.

unable to form the specific intent to kill because he was so overwhelmed or overpowered by drugs to the point of losing his faculties at the time the crime was committed." *Id.* at 908.

As the trial court noted in its Pa.R.A.P. 1925(a) opinion, "Hinkle was the only witness to testify that [Appellant] appeared intoxicated on the night of the incident." Trial Ct. Op., 8/3/17, at 5 n.2. Significantly, Hinkle did not observe Appellant until after the altercation had occurred. As the court additionally noted, video footage of Appellant chasing Decedent does not depict Appellant staggering or swaying. *See id.* at 10 n.4. Accordingly, the trial court did not palpably abuse its discretion in denying Appellant's weight claim regarding whether Appellant was so overpowered by his intoxication that he was unable to form a specific intent to kill. *See Tharp*, 830 A.2d at 528. Thus, the trial court did not commit an error in this regard.

Next, Appellant claims that the trial court erred by failing to declare a mistrial based on prosecutorial misconduct during closing arguments. In particular, the prosecutor indicated that Decedent was "gutted like a pig." N.T. Trial Vol. 1, 4/6/17, at 125. Appellant argues that "the inevitable effect of these remarks was to inflame the passion of the jury to such an extent that they could no longer objectively assess the evidence." Appellant's Brief at 12.

> A claim of prosecutorial misconduct is evaluated based upon
>
> whether the defendant was deprived of a fair trial, not deprived of a perfect one. Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect . . . [was] to prejudice the jury, forming in their minds fixed bias and hostility

toward the defendant so that they could not weigh the evidence objectively and render a true verdict.

***Commonwealth v. Ragland***, 991 A.2d 336, 340 (Pa. Super. 2010) (citation omitted).

Instantly, once the "gutted" remark was made by the prosecutor, defense counsel objected. The trial court sustained the objection. In front of the jury, the court warned the prosecutor to "refrain from those kinds of remarks," and instructed that she could not use the term "gutted." N.T. Trial Vol. 1, 4/6/17, at 125. The prosecutor complied with this directive. In the words of the court, although the language was "a little overboard[,] . . . the jury knows it was oratorical flair. It was common sense. He was stabbed a number of times but he certainly wasn't gutted. So I am going to deny the motion for a mistrial." ***Id.*** at 159-60; ***see Commonwealth v. Chmiel***, 889 A.2d 501, 544 (Pa. 2005) (indicating prosecutorial misconduct will not be found for mere use of oratorical flair). Accordingly, the trial court did not err by refusing to call a mistrial following the prosecutor's remarks during closing arguments.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/18

- 6 -