**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Lynell RAGLAND, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 4, 2010.
Filed March 9, 2010.

---

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., for Com., appellee.

BEFORE: STEVENS, SHOGAN, and COLVILLE *, JJ.

\* Retired Senior Judge assigned to the Superior Court.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after a jury convicted Lynell Ragland of endangering the welfare of a child[1] and corrupting a minor.[2] On July 31, 2008, he was sentenced to a one (1) to two (2) year term of imprisonment to run consecutively with a sentence he was already serving and five years reporting probation.[3] Appellant contends that the trial court erred in refusing to grant a mistrial when the prosecution made improper statements to the jury during closing argument that deprived him of a fair trial. We affirm.

¶ 2 The facts of this case as adduced at trial were thoroughly and comprehensively set forth by the trial court as follows:

One day in the summer of 2004, [thirteen year old L.B.] called [Appellant], who was her step-father at the time, and asked him to take her to his mother's house for the weekend. [Appellant] agreed and picked up [L.B.] from her mother's home around 1:00 a.m. Once in the car, [Appellant] told [L.B.] that "the gas or the water or something wasn't working" at his mother's house, and instead he would take her to a hotel where she could go swimming in an indoor pool.

Upon arriving at the hotel, [Appellant] checked in under the name Aaron Burnett. He took [L.B.] to the room, where he began to tell her how guys would try "to get in [her] head in order to have sex with [her]." During this conversation, [Appellant] told [L.B.] to take off her clothes. [Appellant] touched [L.B.] on her breast and her vagina with his hands, and then inserted his fingers into [L.B.]'s vagina. [Appellant] then laid on top of [L.B.], inserted his penis into her vagina, and started having sex with [her]. It lasted for a "little while," until [L.B.] asked [Appellant] to stop. Then [Appellant] rolled over and fell asleep.... [L.B.] got off the bed and slept on the floor. [L.B.] never wanted [Appellant], her step-father to touch her or have sex with her. [Appellant] took [L.B.] home the next morning. When she arrived home, [L.B.] called her maternal grandmother ... and told her what happened.

The day after [L.B.] returned home, she told her mother about what [Appellant] did to her at the hotel. Her mother "flip[ped]" out and took her to Temple Hospital. [L.B.] was never examined by a physician because [her] mother did not want to involve the Department of Human Services ("DHS"). [L.B.]'s mother did not want DHS to remove [L.B.] from her care. [L.B.'s] mother never filed a complaint with the police.

On February 27, 2005, after the police were called to [L.B.'s home] for a domestic disturbance between [L.B.] and her mother, [L.B.] told the police that [Appellant] had taken her to a hotel in

---

1. 18 Pa.C.S.A. § 4304(A).

2. 18 Pa.C.S.A. § 6301(A). Appellant was acquitted of rape (forcible compulsion), aggravated indecent assault, unlawful contact/ communication with a minor, and sexual assault.

3. After filing a timely notice of appeal, Appellant filed a concise statement of matters complained of on appeal pursuant to the court's order to do so. Although the trial court directed Appellant to file a concise statement "no later that fourteen (14) days after the entry of [its] order," we note that Rule 1925(b) was amended to require a trial court to "allow the appellant *at least 21 days* from the date of the order's entry on the docket for the filing and service of the [concise] statement." Pa.R.A.P. 1925(b)(2) (emphasis added). Thus, we deem Appellant's concise statement to be timely filed.

the summer of 2004 and vaginally raped her. [Appellant] was no longer living in L.B.'s home and was not at L.B.'s home when the two officers arrived. The officers wrote an incident report and took [L.B.] to the Special Victims Unit (SVU).

Detective Owens of the SVU interviewed [L.B.]. Based on the information that [L.B.] provided, he investigated the hotel records. The hotel records showed that [Appellant] checked-in on July 22, 2004 under the name Aaron Burnett. Armed with the information from the [L.B.]'s interview and the hotel records, the detective obtained an arrest warrant for [Appellant] on April 1, 2005. On April 15, 2005, [Appellant] returned Detective Owens's call, where he was informed that there was a warrant for his arrest. He told the detective that he would come to the precinct that night around 7:00 p.m., but [Appellant] never showed up. [Appellant] was finally apprehended and arrested on June 7, 2006. While in police custody, [Appellant] admitted to taking [L.B.] to the hotel, but that nothing happened between him and [L.B.].

Both counsels stipulated that DHS conducted an investigation of [L.B.] being raped by [Appellant]; the report was founded, and that [Appellant] owned two driver's licenses: one in the name of Lynell Ragland and another in the name of Aaron Burnett.

Trial Court Opinion, 2/11/08, at 2–4 (citations omitted).

¶ 3 During closing arguments, Appellant's defense was premised largely upon his theory that L.B. fabricated her rape allegations because she was bitter about being disciplined by Appellant. Defense counsel attempted to portray L.B. as an unruly child who had behavioral problems, was repeatedly truant, and was passed among relatives when she refused to live in her mother's house any longer. To strengthen her attack on L.B.'s credibility, defense counsel accused L.B. of telling a "big, big tale" and flatly told the jury that L.B. was a liar who concocted the entire story:

> L.B. manipulated her mother. She manipulated the police that were called to the scene. She manipulated DHS. And she manipulated the various people whose homes she went into, that she was repeatedly told or asked to leave.
>
> L.B. came into this Courtroom and said that [Appellant] raped her. Her stepfather [sic]. *That is one big lie.*

N.T. Trial, 6/6/08, at 67, 71 (emphasis added). Defense counsel embellished her accusation of L.B.'s manipulation by telling the jury she personally "could have fallen over some of the things [L.B.] said." *Id.* at 71.

■ ¶ 4 Appellant's sole claim on appeal is that the trial court erred in refusing to grant a mistrial based on prosecutorial misconduct. He questions the propriety of the following statement made to the jury in closing by the district attorney in response to defense counsel's attack on L.B.'s credibility:

> But the only thing that matters in this case is what you do, is what you say. That's it. Because you have the final say. You know, this girl has been let down her whole life by people that were charged with taking care of her, or charged with looking out for her benefit, for her best interests. And they failed her. By returning a verdict of guilty, you could right those wrongs.

N.T., 6/6/08, at 99. After defense counsel promptly objected to this remark, the trial court immediately sustained the objection, admonishing the prosecutor, stating, "[t]his is not for sympathy purposes. It is

based on the evidence, not on sympathy." *Id.*

¶ 5 Appellant moved for a mistrial based on the aforementioned comment by the prosecution. The trial court denied Appellant's motion, reasoning that along with its immediate response in sustaining Appellant's objection, "a cautionary instruction ... would correct any alleged basis for a mistrial." Trial Court Opinion, 2/11/09, at 7. The trial court proceeded to give the jury the following instruction:

> Now, as you go along, you are to use the law that I give you in order to reach a decision as to whether or not [Appellant] is or is not guilty of each charge. *You should not and do not base your decision on any sympathy for or prejudice against [Appellant], or the crime, or the witnesses.* Do not base your decision on which attorney you think made the better speech or argument.
>
> Now, in the closing argument of the Assistant District Attorney, she pointed to several facts that you should consider in reaching your verdict. *I am instructing you that you are to base your decision on the evidence as it was presented and not any attempt to right any of the wrongs that you believe may have occurred during the life of [L.B.].*
>
> In determining the facts, you are to consider only the evidence as it has been presented in Court and the logical inferences that you can derive from that evidence....

N.T., 6/9/08, at 5–6 (emphasis added).

■ ¶ 6 The following standards apply to our review of a trial court's denial of a motion for a mistrial:

> The trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, ... assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Judy,* 978 A.2d 1015, 1019 (Pa.Super.2009) (quoting *Commonwealth v. Lettau,* 955 A.2d 360, 363 (Pa.Super.2008) (internal citations and quotations omitted)). "The remedy of a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Judy,* 978 A.2d at 1019 (citations omitted).

■ ¶ 7 With regard to a claim of prosecutorial misconduct in a closing statement, it is well settled that:

> The prosecutor is allowed to vigorously argue his case so long as his comments are supported by the evidence or constitute legitimate inferences arising from that evidence. In considering a claim of prosecutorial misconduct, our inquiry is centered on whether the defendant was deprived of a fair trial, not deprived of a perfect one. Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect ... [was] to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.

*Commonwealth v. Smith,* 985 A.2d 886, 907 (Pa.2009) (quoting *Commonwealth v.*

*Washington,* 549 Pa. 12, 27, 700 A.2d 400, 407–408 (1997)) (quotation marks omitted). Further, the propriety of the prosecution's remarks in closing argument must be evaluated in light of defense counsel's comments in closing:

> In determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.
>
> \* \* \* \* \* \*
>
> It is settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. However, the prosecutor may comment on the credibility of witnesses. Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor. If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility.

*Commonwealth v. Chmiel,* 585 Pa. 547, 618–20, 889 A.2d 501, 544 (2005) (internal citations and quotations omitted).

¶ 8 In *Commonwealth v. Judy, supra,* this Court similarly evaluated whether a district attorney's comments in closing argument constituted prosecutorial misconduct. In *Judy,* the district attorney described the victim as a little girl whose love and trust was violated and asked the jury "to give [the child victim] justice" as the sexual abuse she suffered at the hands of the appellant would stay with her into adulthood. *Judy,* 978 A.2d at 1027. This Court found that the prosecutor's comments represented permissible oratorical flair responsive to the defense's attempt to undermine the victim's credibility, when defense counsel had depicted the child victim as a troubled girl who fabricated allegations of sexual abuse against the appellant to win the favor of her family. *Id.* at 1020, 1027. *See Chmiel,* 585 Pa. at 621, 889 A.2d at 545 (finding prosecutor's comments to be permissible when defense counsel repeatedly called the prosecution witnesses liars and had vouched for the credibility of the defense witnesses).

¶ 9 Likewise, in the case *sub judice,* we find that the comments made by the district attorney constituted permissible oratorical flair when viewed in the context of defense counsel's contention that L.B. was a troubled child not worthy of belief. Defense counsel blatantly asserted that L.B.'s account was "one big lie," a "big, big tale," and a story so large that defense counsel "could have fallen over some of the things [L.B.] said." We find it reasonable for the prosecution to respond to these allegations by reiterating the dysfunction in which this child lived, including the fact that L.B.'s mother failed to take appropriate action when L.B. told her of Appellant's exploitations. Accordingly, we find there was no prosecutorial misconduct as the effect of the prosecution's statements did not "prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." *Id.*

¶ 10 Moreover, the trial court promptly sustained Appellant's objection and properly instructed the jury to base their verdict solely on the evidence presented. There is a presumption that juries follow instructions given by the trial court. *Commonwealth v. Housman,* —— Pa. ——, ——, 986 A.2d 822, 837 (2009). Thus, the trial court did not abuse its discretion in

refusing to grant a mistrial on the basis of prosecutorial misconduct.

¶ 11 Affirmed.