J-S71036-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTWINE REID, | |
| Appellant | No. 3869 EDA 2016 |

Appeal from the Judgment of Sentence September 20, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0007342-2015

BEFORE:  PANELLA, J., STABILE, J., and PLATT, J.*

MEMORANDUM BY PLATT, J.:                    **FILED JANUARY 04, 2018**

Appellant, Antwine Reid, appeals from the judgment of sentence imposed after his jury conviction of first-degree murder, firearms not to be carried without a license, carrying firearms on a public street in Philadelphia, and possession of an instrument of crime.[1]  We affirm.

We take the following pertinent facts and procedural background from our independent review of the certified record.  On August 9, 2013, at approximately 2:00 A.M., Appellant argued with, and punched, the victim, before fatally shooting him thirteen times, at close range, in his head, back,

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 6106, 6108, and 907, respectively.

abdomen, thigh, arms, and hand. Police recovered fired cartridge casings from the crime scene and obtained video surveillance footage of the victim and his friends at a nearby bar before the murder.

On September 20, 2013, Officer Earl Tilghman and his partner, Officer Terrell Greene, of the Philadelphia Police 19th District, were uniformed and patrolling on foot when an unidentified male approached them, and told them that an individual who was involved in a recent homicide was standing up the street. (*See* N.T. Trial, 9/15/16, at 222-27). Based on the information provided by the informant, the officers stopped Appellant, and, because they were on foot, arranged for him to be transported to the police station. Homicide Detective John Harkins spoke with Appellant the next morning, September 21, 2013, at the police station. (*See id.* at 235). He collected Appellant's basic biographical information, including his address and phone number, as was his usual practice. (*See id.* at 237-38). Thereafter, Appellant left the station. (*See id.* at 239).

Two eyewitnesses provided statements to the police identifying Appellant, whom they knew from the neighborhood, as the person who shot the victim multiple times in retaliation for a recent robbery. (*See* N.T. Trial, 9/14/16, at 9, 17, 24, 36-45 (Jerome Brundridge testifying, consistent with his statement to police, that Appellant argued with victim and shot him)); (N.T. Trial, 9/16/16, at 10-12, 17, 20, 33 (Gary Kenan identifying Appellant as shooter and explaining it was in retaliation for a robbery in his statement

- 2 -

to police)).[2]  Additionally, witness Raheen Bullock told police and the jury that he had conversed with Appellant about his intent to retaliate against the victim, and then, minutes later, he heard multiple shots fired.  (*See* N.T. Trial, 9/16/16, at 63, 66-68, 88-96).

Police executed an arrest warrant for Appellant on May 23, 2015.  (*See id.* at 48-51, 180-82).   The police also obtained a search warrant for Appellant's cell phone records and compared them to those of the victim. (*See* N.T. Trial, 9/13/16, at 97-98).  The records confirmed that Appellant had used his cell phone near the time of the murder within a sixteen to seventeen block radius of the crime scene.  (*See* N.T. Trial, 9/16/16, at 152).  One hour before the shooting, Appellant and the victim had engaged in two short phone calls, and there were forty-eight text messages between them in the preceding two weeks.  (*See id.* at 160, 164).

On August 31, 2016, Appellant filed a motion to suppress his cell phone records, arguing that police obtained his phone number during the illegal search of his phone and Detective Harkins failed to give him his *Miranda*[3] warnings.    (*See*  Motion  to  Suppress  Physical  Evidence,  8/31/16,  at

---

[2] At trial, Kenan admitted that he initialed and signed his statement to police, but he testified that his statement to them that he witnessed Appellant shoot the victim was false.  (*See* N.T. Trial, 9/15/16, at 95).  The jury, as fact-finder was free to decide which version of Kenan's story to believe.  *See Commonwealth v Brown*, 52 A.3d 1139, 1168 (Pa. 2012) (jury is free to credit prior inconsistent statement over recantation).

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 3 -

unnumbered page 2 ¶¶ 5-6; **see also** N.T. Trial, 9/13/16, at 2-3, 54-55, 57-59, 83-84). At a hearing held outside the presence of the jury at the start of trial, Detective Harkins testified that he takes the biographical information of people who entered Homicide as a "general practice." (N.T. Trial, 9/13/16, at 35). He also stated that he gave Appellant his warnings at 6:10 A.M., as memorialized on the biographical information report. (**See id.** at 30-31). The trial court denied Appellant's motion, finding his testimony that he did not give the police his cell phone number and that the police failed to provide him with his **Miranda** warnings to be incredible. (**See id.** at 100-02).

On September 20, 2016, the jury convicted Appellant of the aforementioned crimes and the court sentenced him, that same day, to a mandatory sentence of life without parole, and a concurrent term of not less than five nor more than ten years' incarceration. The trial court denied Appellant's post-sentence motions on November 28, 2016. Appellant timely appealed.[4]

Appellant raises two questions for our review.

1.    Did the trial court err and cause irreparable harm to Appellant when the court ruled that, despite being pulled off the street, handcuffed, and transported to police headquarters based on a purported tip from an anonymous informant, Appellant was not arrested and that the subsequent eliciting of biographical information, including a cell phone number, was not fruit of an illegal seizure?

---

[4] Pursuant to the trial court's order, Appellant filed a timely statement of errors complained of on appeal on January 12, 2017. The court filed an opinion on April 12, 2017. **See** Pa.R.A.P. 1925.

2. Did the trial court err and cause irreparable harm to Appellant when the trial court denied Appellant's motion for a mistrial when one of the jurors stated that she was approached during the luncheon break by a man from the defense side of the courtroom, when the juror said that she was scared and concerned for her safety, and when the juror shared with the rest of the jury panel the details of the contact and her fears for her safety?

(Appellant's Brief, at 4) (unnecessary capitalization omitted).

In his first issue, Appellant argues that the trial court erred in denying his motion to suppress because police seized him illegally prior to his interrogation on September 21, 2013, and any information obtained as a result thereof was fruit of the poisonous tree. (*See id.* at 8-10). This issue is waived.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "This requirement bars an appellant from raising a new and different theory of relief for the first time on appeal." *Commonwealth v. Baez*, 169 A.3d 35, 41 (Pa. Super. 2017) (citation omitted); *see also Commonwealth v. Thur*, 906 A.2d 552, 566 (Pa. Super. 2006), *appeal denied*, 946 A.2d 687 (Pa. 2008) ("When a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression.") (citations omitted).

In the case *sub judice*, in moving to suppress the cell phone records, Appellant's counsel argued that "[Appellant's] position is, Your Honor, that the

[cell] phone was seized without either [his] permission and without a search warrant." (N.T. Trial, 9/13/16, at 2-3; *see id.* at 85-86; Motion to Suppress Physical Evidence, at unnumbered pages 1-2 ¶ 3 ("During the interrogation, homicide detectives confiscated [Appellant's] cellular telephone and reviewed its contents."). At no time did Appellant challenge the police's seizure of him from the street on September 20, 2013. (*See* N.T. Trial, 9/13/16, at 2-91). Therefore, Appellant's first issue is waived. *See Baez*, *supra* at 41; *Thur*, *supra* at 566.[5]

In his second claim, Appellant contends that the trial court erred in denying his motion for a mistrial. (*See* Appellant's Brief, at 10-12). Specifically, he maintains that the court should have granted a mistrial because a juror polluted the jury pool when she told them that a man from the defense side of the courtroom scared her by approaching her during a lunch break. (*See id.* at 10). This issue lacks merit.

> The following standards apply to our review of a trial court's denial of a motion for a mistrial:

_____

[5] Moreover, even assuming *arguendo* that the trial court erred in denying Appellant's motion to suppress, any such error would be harmless where there was sufficient independent evidence to support his convictions, including video surveillance and witnesses who identified Appellant as the perpetrator of the homicide and explained his motive. *See Commonwealth v. Rose*, ___ A.3d ___, 2017 WL 4324738, at *7 (Pa. Super. filed Sept. 29, 2017) ("Harmless error exists if . . . the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict.") (citation omitted). Therefore, Appellant's issue, even if not waived, would lack merit.

The trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

The remedy of a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.

*Commonwealth v. Ragland*, 991 A.2d 336, 340 (Pa. Super. 2010), *appeal denied*, 4 A.3d 1053 (Pa. 2010) (citations and quotation marks omitted).

Further,

The decision to discharge a juror is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. This discretion exists even after the jury has been [e]mpanelled and the juror sworn. Our Supreme Court explained that a finding regarding a venireman's impartiality is based upon determinations of demeanor and credibility that are peculiarly within a trial [court]'s province. . . . [Its] predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record. It is the appellant's burden to show that the jury was not impartial. Further, this Court has found that *per se* prejudice does not result where a juror becomes upset during the trial.

*Commonwealth v. Rush*, 162 A.3d 530, 537 (Pa. Super. 2017), *appeal denied*, 170 A.3d 1049 (Pa. 2017) (citations, emphasis, and quotation marks omitted).

Instantly, on the second day of trial, a spectator seated on Appellant's side of the courtroom approached Juror 13 during the lunch break. (*See* N.T. Trial, 9/14/16, at 128, 130-31). The juror was entering the courthouse when the man approached her, telling her that she was not supposed to be on her phone. The juror reminded him that she could use the phone during lunch, and the man said, "[Y]ou can be talking about the case[.] . . . [W]hy don't you put my number in there while you are at it[?]" (*Id.* at 132). The juror walked away, and reported the incident to the court, after talking with her fellow jurors. (*See id.* at 132-33). She assured the court that she believed the man only was flirting, and that it would not affect her ability to decide the case. (*See id.* at 134-35). In an abundance of caution, the court excused Juror 13 and individually interviewed the remaining members of the panel, all of whom assured it that the incident would have no effect on their ability to decide the case. (*See id.* at 136-66, 171). As an additional precaution, the jury was sequestered during lunch for the remainder of the trial and three males that fit the description of the individual who had approached Juror 13 were removed from the gallery. (*See id.* at 170-71).

Based on our independent review of the record, we discern no abuse of discretion by the trial court in denying Appellant's motion for a new trial where "the alleged prejudicial event [could not] reasonably be said to [have] deprive[d Appellant] of a fair and impartial trial." *Ragland*, *supra* at 340 (citation omitted). Indeed, the trial court questioned each juror individually

and made the credibility determination that they could be fair and impartial, before dismissing Juror 13 in an abundance of caution. We will not disturb the trial court's decision. **See Rush**, **supra** at 537. Appellant's second issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2018