J-S23021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHALIL  SIMMS, | : | |
| | : | |
| Appellant | : | No. 891 EDA 2017 |

Appeal from the Judgment of Sentence March 4, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003794-2014

BEFORE: SHOGAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED JULY 18, 2018**

Appellant Khalil Simms appeals *nunc pro tunc* from the judgment of sentence following his conviction for third-degree murder, possession of an instrument of crime (PIC), and violations of the Uniform Firearm Act (VUFA), including VUFA 6105 (possession of a firearm prohibited), VUFA 6106 (firearms not to be carried without a license), and VUFA 6108 (carrying a firearm in public in Philadelphia).[1]  Appellant asserts that the evidence was insufficient to convict him of third-degree murder because the Commonwealth failed to disprove that Appellant did not act in justified self-defense.  Appellant also asserts that he is entitled to a new trial based on several instances of alleged prosecutorial misconduct during closing argument.  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(c), 907, 6105(a)(1), 6106(a)(1), and 6108, respectively.

The trial court summarized the relevant facts as follows:

[Appellant] often sold marijuana out of Ananh ("Gak") Ketphahn's house at 44 South 44th Street, Philadelphia. On June 17, 2013, [Lajuan] Watkins [(Decedent)] and his cousin went to the 44th Street house to acquire marijuana from [Appellant]. The sale went sour and following a fistfight between [Decedent] and [Appellant], [Appellant] shot and killed [Decedent].

As a result of an unrelated medical issue, Gak was not competent to testify at trial. However, because Gak had previously testified at a preliminary hearing at which [Appellant] was represented by counsel, his preliminary hearing testimony was admitted into the evidence at trial.

Gak testified that he lived at 44 South 44th Street, and that [Appellant] was in his house selling marijuana to [Decedent] when those two men engaged in what Gak described as "wrestling" or a "fistfight" in the hallway of the house. The fight moved into a back room and Gak heard shots coming from the room and saw a muzzle flash. One of the bullets hit Gak. Gak testified that [Appellant] was carrying a "funny colored" gun, and after the gunfire he saw "Decedent" with a red spot on his chest. At some point not long after, [Appellant] fled, carrying a blue bag containing marijuana.

After the shooting, Gak tried to flee[,] but [Decedent's] cousin, Brahim Marshall, was standing in the doorway. Marshall had a black object in his hand, and Gak ran in the other direction, during which time he heard more shots. As he was running, Gak grabbed [Decedent], who had already been shot, in attempt to shield himself from the gunfire. Gak then disposed of his marijuana to avoid getting arrested. Another witness, Christopher Goodbread, testified that Marshall also fled the scene at that point, and that he saw [Appellant] wiping blood off himself in the sink. Goodbread further testified that Gak told him that "the stupid fools tried to rob him." Gak also described the "wrestling match" to Goodbread, as well as the fact that either Marshall or [Decedent] was carrying a gun. Goodbread then called 911 and informed them there had been a shooting.

Officer Marc Peterson was the first officer on the scene. He first spoke with Gak and Gak's mother, and Gak presented a story of how he got shot. Gak's initial story was that Marshall had shot

both [Decedent] and Gak himself. After Officer Peterson discovered the body of the victim, Gak told Office Peterson that [Decedent] was not involved in the shooting but fled as it occurred. This account was inconsistent with his preliminary hearing testimony.

Dr. Albert Chu, Chief Deputy Medical Examiner[,] was qualified as an expert witness in forensic pathology. Dr. Chu testified that [Decedent] suffered two gunshot wounds, one of which entered the right side of his chest and exited the left side of his neck, and the other[,] which entered the back of his right arm and exited on the inner right arm. Dr. Chu testified that there was no evidence of close range gunfire.[2] Dr. Chu concluded, to a reasonable degree of medical certainty, that the cause of death was gunshot wound to the chest, and the manner of death was homicide.

Officer Robert Stott, of the Philadelphia Police Department[,] was qualified as an expert witness in the area of firearms identification. Officer Stott testified that the two recovered cartridge cases at the scene were from different caliber guns. Officer Stott further testified that the one bullet can strike two different people, and that gunpowder residue can be removed by handwashing. Further, he stated that his conclusions were to a reasonable degree of professional certainty.

Trial Ct. Op., 7/17/17, at 2-4 (citations omitted).

This matter proceeded to a jury trial in which the jury was selected on November 9, 2015, and the trial took place from November 10 through November 12, 2015. Appellant did not claim that he acted in self-defense at trial,[3] a jury charge was not requested regarding self-defense, and the jury was not charged regarding this justification.

---

[2] Close-range gunfire is that which is within two feet. *See* N.T., 11/10/15, at 153.

[3] At trial, Appellant's defense was that he was not the shooter. N.T., 11/12/15, at 16.

During closing argument, Appellant's counsel commented that Marshall had not testified during the trial. N.T., 11/12/15, at 9-10. The trial court overruled the Commonwealth's objection. *Id.* at 10. In response, the Commonwealth indicated during its closing argument that Marshall was also a defendant regarding the incident and could invoke his Fifth Amendment right to remain silent. *Id.* at 24. The trial court overruled Appellant's counsel's objection to this portion of the Commonwealth's closing argument. *Id.*

Also during closing argument, the Commonwealth implied that Goodbread had been intimidated and stated that Appellant had bullied Gak into allowing him to sell drugs from Gak's home. *Id.* at 19-20. Appellant's counsel did not object to the implication that Goodbread was intimidated, but he objected regarding the statement that Gak had been bullied, and the trial court sustained that objection. *Id.* at 20-21. The court gave the jury instructions regarding the intimidation and bullying arguments, informing them that they must disregard those portions of the Commonwealth's argument. *Id.* at 71.

At the conclusion of the trial, the jury convicted Appellant of the aforementioned offenses. On March 4, 2016, Appellant was sentenced to twenty to forty years' incarceration for third-degree murder, two-and-a-half to five years' incarceration for PIC, five to ten years' incarceration for VUFA 6105, three-and-a-half to seven years' incarceration for VUFA 6106, and two-and-a-half to five years' incarceration for VUFA 6108. All sentences were to

run concurrently, for an aggregate sentence of twenty to forty years' incarceration.

Post-sentence motions were filed and denied; however, no direct appeal was filed on behalf of Appellant. Appellate counsel filed a PCRA petition on November 23, 2016, seeking to have Appellant's direct appeal rights reinstated. Appellant's appellate rights were reinstated, *nunc pro tunc*, on February 27, 2017.

Appellant filed a notice of appeal on March 11, 2017, and a timely statement of errors complained of on appeal on April 3, 2017. The trial court complied with Pa.R.A.P. 1925(a).

Appellant raises the following questions for our review:

1. Was there insufficient evidence as a matter of law to sustain Appellant's conviction for [m]urder in the [t]hird [d]egree because the Commonwealth failed to disprove beyond a reasonable doubt that Appellant did not act in justified self-defense when Decedent and his accomplice/coconspirator came into the home wherein Appellant was an invitee and Decedent and/or his accomplice/coconspirator were armed and intended to rob the individuals in the home wherein Appellant was an invitee?

2. Did the trial court err and cause irreparable harm to Appellant by overruling an objection during closing argument when the prosecutor engaged in prosecutorial misconduct by vouching that the accomplice and coconspirator of Decedent by the name of [Brahim] Marshall would invoke his Fifth Amendment privilege if called as a witness and by stating that Mr. Marshall is a defendant in this case when Mr. Marshall did not invoke Fifth Amendment privilege, was not called as a witness in the case, and there was no evidence that Mr. Marshall was a defendant in this case?

3. Did the trial court err and cause irreparable harm to Appellant by denying Appellant's request for a mistrial because the

prosecutor engaged in prosecutorial misconduct when the prosecutor repeatedly mentioned witness intimidation during closing argument when there was no evidence of any intimidation and intimidation could only be inferred to Appellant?

4. Did the trial court err and cause irreparable harm to Appellant by denying Appellant's request for a mistrial because the prosecutor engaged in prosecutorial misconduct when the prosecutor stated during closing argument that Appellant bullied Ananh Ketphahn ("Gak") to allow Appellant to sell drugs in Gak's home?

Appellant's Brief at 4-5.

In his first issue, Appellant asserts that the evidence adduced at trial was insufficient to convict him of third-degree murder because "[j]ustified self-defense was not disproven." *Id.* at 10. Appellant argues that

> Appellant was an invitee in Gak's house. Given objective analysis, Appellant and anyone would fear for their lives when confronted with two individuals, [Decedent and Marshall,] intent on committing armed robbery. Appellant's actions were justified given the threat posed. At most, Appellant was guilty of voluntary manslaughter.
>
> Given the prior and escalating fighting, it is unreasonable to attribute malice aforethought to Appellant.

*Id.* at 12.

In its Rule 1925(a) opinion, the trial court found that "[Appellant's] assertion that the Commonwealth failed to disprove self-defense beyond a reasonable doubt is completely without foundation. There was no claim of self-defense raised at trial nor was a charge thereon requested or given by the court." Trial Ct. Op., 7/17/17, at 8.

Our standard of review for sufficiency claims is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Tucker*, 143 A.3d 955, 964 (Pa. Super. 2016) (brackets and citation omitted), *appeal denied*, 165 A.3d 895 (Pa. 2017).

To sustain a conviction for third-degree murder, "the Commonwealth need only prove that the defendant killed another person with malice aforethought." *Commonwealth v. Fisher*, 80 A.3d 1186, 1191 (Pa. 2013) (citation omitted). "[M]alice comprehends not only a particular ill-will, but also a wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Id.* (ellipses, brackets, and citation omitted).

As to self-defense,

[t]he use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other

person. ***See*** 18 Pa.C.S. § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense.

***Commonwealth v. Bullock***, 948 A.2d 818, 824 (Pa. Super. 2008) (citation omitted). To satisfy its burden to disprove self-defense,

the Commonwealth must prove beyond a reasonable doubt one of the following elements: (1) that the defendant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, or that the defendant used more force than was necessary to save himself from death, great bodily harm, or the commission of a felony; (2) that the defendant provoked the use of force; or (3) that the defendant had a duty to retreat and that retreat was possible with complete safety.

***Commonwealth v. Burns***, 765 A.2d 1144, 1148-49 (Pa. Super. 2000). If self-defense has not been raised at trial, however, "the Commonwealth has no burden to disprove it." ***Commonwealth v. Butler***, 647 A.2d 928, 931 (Pa. Super. 1994).

Instantly, as the trial court noted, Appellant failed to raise the justification of self-defense at trial. Thus, because Appellant raised the issue for the first time on appeal, he has waived review of his contention that the Commonwealth failed to disprove his theory of self-defense. ***See id.***; ***see also*** Pa.R.A.P. 302 (indicating that an appellant may not raise a claim for the first time on appeal).

Moreover, Appellant did not take responsibility for the shooting at trial. Instead, defense counsel argued that the evidence "show[ed] that there [was] reasonable doubt that [Appellant] was the shooter." N.T., 11/12/15, at 16.

- 8 -

Thus, Appellant did not admit that he shot Decedent, and his claim of self-defense at this juncture is meritless. ***See Butler***, 647 A.2d at 931 (noting that the defendant offered an alibi defense at trial rather than claiming self-defense).

In his next three issues, Appellant asserts that prosecutorial misconduct occurred during closing argument that entitles him to a new trial.

By way of background to Appellant's first claim of prosecutorial misconduct, during Appellant's counsel's closing argument, the following exchange occurred:

> [Appellant's Counsel]:  Where is Mr. Marshall?  How come he is not here?  How come he didn't come in and testify?
>
> [Commonwealth]:  Objection, your Honor.
>
> The Court:  Overruled.
>
> [Appellant's Counsel]:  That's [the Commonwealth's] burden. They decide who to bring. . . .  It's their responsibility to bring the people to make out the charges.

N.T., 11/12/15, at 9-10.  Thereafter, during the Commonwealth's closing argument, the Commonwealth addressed the issue:

> [Commonwealth]:  Mr. Marshall is a defendant in this case.
>
> [Appellant's Counsel]:  Objection.
>
> [Commonwealth]:  He was a defendant in this case, he was charged.  Guess what right he has?  The same right as [Appellant].
>
> [Appellant's Counsel]:  Objection, judge.
>
> The Court:  Overruled.
>
> [Commonwealth]: He doesn't have to say a word.  He was charged and arrested.  I can't make him say anything.  That's why Mr. Marshall is not here.  I can't make him talk.

*Id.* at 24.

Appellant asserts that the Commonwealth improperly "vouch[ed] as to the potential testimony of the [r]obbery coconspirator, Mr. Marshall" by arguing he would have invoked his Fifth Amendment privilege against self-incrimination. Appellant's Brief at 13. Appellant alleges that "[t]his harmed Appellant in that the prosecutor improperly vouched for a witness['] potential testimony or lack thereof when, without such vouching, the jury could have believed that the potential testimony would be exculpatory." *Id.* at 14.

When considering claims that a prosecutor has committed misconduct in his or her comments to the jury, we note that "[w]here the prosecutor's arguments are supported by the evidence and contain inferences which are reasonably derived therefrom, no new trial is warranted." *Commonwealth v. Bronshtein*, 691 A.2d 907, 919 (Pa. 1997).

> A claim of prosecutorial misconduct is evaluated based upon
>
> whether the defendant was deprived of a fair trial, not deprived of a perfect one. Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect . . . [was] to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.

*Commonwealth v. Ragland*, 991 A.2d 336, 340 (Pa. Super. 2010) (citation omitted). "Although two wrongs do not make a right, otherwise improper comments of the prosecutor are permissible when they merely counter the arguments made by defense counsel, in that such commentary would not have the unavoidable effect of prejudicing the jury." *Commonwealth v. Graham*,

560 A.2d 129, 133 n.6 (Pa. 1989). Additionally, "when a trial court finds that a prosecutor's comments were inappropriate, they may be appropriately cured by a cautionary instruction to the jury." ***Commonwealth v. Harris***, 884 A.2d 920, 927 (Pa. Super. 2005).

In its Rule 1925(a) opinion, the trial court concluded that Appellant's argument regarding vouching "is factually inaccurate and completely misstates the evidence," since Marshall was not called by either side and was not a "witness," and Appellant's counsel was the first to mention Marshall during closing arguments. Trial Ct. Op., 7/17/17, at 9. The trial court opined that the Commonwealth merely engaged in "fair response" to Appellant's counsel's statements about Marshall. ***Id.***

We agree with the trial court that the Commonwealth's explanation of Marshall's failure to appear and testify at the trial was directly in response to a portion of Appellant's counsel's closing argument. ***See Graham***, 560 A.2d at 133. Moreover, Marshall was not actually a witness at trial in the instant matter, and therefore the Commonwealth did not vouch for a witness' testimony. Thus, Appellant has not established he was deprived of a fair trial based on the Commonwealth's comments. ***See Ragland***, 991 A.2d at 340.

As background for Appellant's next prosecutorial misconduct issue, we note that the Commonwealth did not explicitly say "intimidation," but implied that intimidation had occurred in this case. The Commonwealth stated that "[w]itnesses do not want to come forward and tell the truth about what happened. We have a term for it. It's called going south." N.T., 11/12/15,

at 19. In reference to Commonwealth witness Goodbread in particular, the Commonwealth asked rhetorical questions: "Do you think he wanted to come in here and say: 'Hey, this guy I knew did X, Y, Z,' going back to the neighborhood? Do you think he was interested in that?" *Id.*

Appellant's counsel did not object at the time the Commonwealth made the foregoing statements. However, at the conclusion of closing arguments, Appellant's counsel argued that the implication that a Commonwealth witness was intimidated was a basis to declare a mistrial. *Id.* at 37. The trial court instructed counsel to draft a proposed instruction regarding intimidation. *Id.* at 50. Counsel for Appellant, the Commonwealth, and the trial court agreed that a cautionary instruction would be given informing the jury that no evidence existed that Goodbread had been intimidated by any party in the case. *Id.* at 53-54. The trial court gave the following instruction to the jury:

> The Court: I must caution you as follows regarding those arguments. First, with respect to Mr. Goodbread, you may obviously consider his demeanor in deciding what weight to give his testimony. However, this Court is not aware of any evidence that he was intimidated by the defendant, so you must disregard that portion of the assistant district attorney's argument.

*Id.* at 71.

Appellant argues that the Commonwealth committed prosecutorial misconduct requiring a new trial because the Commonwealth "referred to witness intimidation[, and t]here was no evidence to support this claim. . . . Witness intimidation creates an implicit sense of prejudice because it shows motive for covering up crimes." Appellant's Brief at 14-15 (citing

- 12 -

*Commonwealth v. Schaeffer*, 236 A.2d 530, 531-32 (Pa. Super. 1968) (Hoffman, J., op. in support of reversal)).[4]

In its Rule 1925(a) opinion, the trial court indicated that "[i]n light of the[ cautionary] instructions, [Appellant] is unable to prove prejudice. While the prosecutor's statements may have been unwise, they do not rise to the extremely high level required for a new trial." Trial Ct. Op., 7/17/17, at 10.

Instantly, with input from Appellant's counsel, the court provided a specific cautionary instruction to the jury. Accordingly, we agree with the trial court that any prejudice from the implication that Goodbread was intimidated was cured by the cautionary instruction. *See Harris*, 884 A.2d at 927. Therefore, Appellant is due no relief based on the Commonwealth's comments. *See Ragland*, 991 A.2d at 340.[5]

_____

[4] Because the *Schaeffer* Court was evenly split, the Court affirmed the judgment below in a *per curiam* order and Judge Hoffman authored the opinion in support of reversal. We note that as an opinion in support of reversal filed in conjunction with a *per curiam* affirmance, the *Schaeffer* opinion is not binding. *See Commonwealth v. Mosley*, 114 A.3d 1072, 1082 n.11 (Pa. 2015) (citation omitted).

[5] In *Schaeffer*, threatening notes were written to a Commonwealth witness, although the author of the notes was unknown. *Schaffer*, 236 A.2d at 531. The defendant argued that the notes were inadmissible because they were not linked to the defendant making the threats. *Id.* However, the notes were admitted into evidence because they were not used to establish guilt, but to explain a prior inconsistent statement. *Id.* The opinion urged that a new trial was required because no cautionary instruction was provided to differentiate between using the notes for their possible impact on credibility instead of in determining guilt or innocence. *Id.* at 531-32. The point made in *Schaeffer* is inapposite to the issue in the instant matter since in *Schaeffer* no cautionary instruction was provided.

As background to Appellant's last prosecutorial misconduct issue, the following transpired during the Commonwealth's closing argument:

> [Commonwealth]: Does he know the defendant? Yes. Does the defendant know where he lives? Yes. Does the defendant basically bully this guy into selling drugs at his house? Yes. Why doesn't the defendant sell drugs out of his own house? What are you bullying this guy for?
>
> [Appellant's Counsel]: Objection. No evidence of the bullying.
>
> The Court: Sustained.

N.T., 11/12/15, at 20-21.

Appellant's counsel argued that the statement that Gak was bullied was one of the grounds to declare a mistrial. *Id.* at 40. The trial court instructed counsel to draft a proposed instruction regarding bullying. *Id.* at 44. Counsel for Appellant, the Commonwealth, and the trial court agreed that a cautionary instruction would be given which indicated that no evidence indicated that Appellant bullied Gak regarding selling marijuana. *Id.* at 55. The trial court gave the following instruction to the jury:

> The Court: [T]his [c]ourt is not aware of any evidence that [Gak] was bullied into allowing [Appellant] to sell marijuana from his home. Therefore, you must disregard that portion of the assistant district attorney's argument.

*Id.* at 71.

Appellant asserts that the Commonwealth engaged in prosecutorial misconduct by indicating that Appellant bullied Gak, and "[t]here was no evidence that Appellant bullied Gak. This statement was misconduct in that it led to the undermining of Appellant's character and his status as an invitee

in Gak's home.  This caused irreparable harm to Appellant's character and legal standing crucial to Appellant's self-defense theory of the case." Appellant's Brief at 16.

In its Rule 1925(a) opinion, the trial court indicated that "the prosecutor's statements may have been unwise, but the cautionary instruction prevents them from rising to the level required for a new trial.  This claim is [] meritless."  Trial Ct. Op., 7/17/17, at 10.

We agree with the trial court that Appellant is not entitled to a new trial. With input from Appellant's counsel, the court provided a specific cautionary instruction to the jury.  Accordingly, any prejudice from the statement that Appellant bullied Gak was cured by the cautionary instruction.  *See Harris*, 884 A.2d at 927.  Therefore, Appellant has not demonstrated entitlement to a new trial based on the Commonwealth's comments.  *See Ragland*, 991 A.2d at 340.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/18/18

- 15 -